A94A2375. STEWART et al. v. THE STATE.
(456 SE2d 693)

BEASLEY, Chief Judge.

We granted interlocutory review of the denial of Stewart's and Jackson's motions to suppress evidence of the fruits of a "no-knock" warrant search of Jackson's apartment in Albany, in which her boyfriend Stewart allegedly also resided. Seized in the search were substantial amounts of cocaine, marijuana, cash, firearms, ammunition and some electronics without identifying serial numbers. Stewart and Jackson were charged with trafficking in cocaine, possession with intent to distribute marijuana, and violations with respect to the firearms and altered electronics. They challenge the search warrant on two grounds: 1) it was not supported by probable cause because it was premised solely on the unverified and uncorroborated statements of an anonymous tipster; 2) the officer applying for the warrant did not set forth any facts in her affidavit from which the issuing judge could reasonably determine the reliability or veracity of the information.

The warrant was issued on March 8, 1994, upon presentation by Officer Reitzell of her affidavit and a criminal history sheet for Stewart. The affidavit stated in pertinent part: "On Tuesday, 3-8-94, Deputy Charles Knowles received a call from a concerned citizen. This citizen asked Deputy Knowles if he was familiar with Donald Stewart. Knowles replied yes. Citizen then asked if Knowles knew where his girlfriend lived. Knowles replied yes. The citizen then stated that Donald had gotten two kilos of cocaine in last night. Citizen states that Donald is keeping the cocaine in the freezer under the hamburger meat. Citizen states that his girlfriend, alias 'Gwinnie' always keeps her freezer real neat and everything in it stacked in order. The cocaine is under the stacks of hamburger meat. Knowles then asked for the address of the girlfriend and the citizen stated the address is 726 Apt D Crawford Drive. Citizen states also that Donald Stewart is currently at the address and his girlfriend's kids are at school and wanted to notify the drug unit so something would be done before the kids get out of school.

"Independent investigation into Donald Stewart has shown Stewart was arrested by the Albany Dougherty Drug Unit on 10-13-80 for possession of marijuana less than one ounce, rape and kidnapping. On

04-29-81 for possession of marijuana less than one ounce. On 11-22-83 for possession of marijuana with intent to distribute. On 03-2-89 for possession of cocaine. On 09-12-89 for probation violation. On 09-20-89 for sale of cocaine. On 07-24-91 for sale of cocaine and on 04-29-93 for battery and obstruction of police officer.

"Investigation also shows that the address of 726 Apt D Crawford Drive has a utility listing to Gwendolyn Green.

"Due to Donald Stewart's past history of drug violations and the details of the location and the drugs by the concerned citizen, it is believed that the information obtained from the concerned citizen is true and correct.

"Due to Donald Stewart's past history of drug violations and violent crimes, such as rape, kidnapping, and obstruction of officers, it is believed that Donald Stewart will attempt to hinder officers in the entry to the apartment and will attempt to destroy any contraband in the residence."

The criminal record attached to the affidavit showed numerous arrests of the 33-year-old male, beginning in October 1980. They included, in addition to those listed in the affidavit, an arrest in May 1993, ten months earlier, for possession of cocaine with intent to distribute. The last arrest, December 14, 1993, three months before the search warrant at issue, was on an arrest warrant of December 10 for probation violation. The history sheet included eight prior drug offenses and thirty-three other offenses (exclusive of probation violations). Although many of these offenses were traffic matters, there were also two charges of battery, two charges of aggravated assault, three charges of theft by receiving stolen property, seven charges of disorderly conduct, plus charges of obstruction of police officers, rape and kidnapping.

OCGA § 17-5-30 (a) (2) declares that a search and seizure is illegal if, for one thing, "there was not probable cause for the issuance of the warrant." This is "the legislature's unequivocal expression of its desire that evidence seized by means of a warrant that is not supported by probable cause be suppressed." *Gary v. State*, 262 Ga. 573, 575 (422 SE2d 426) (1992).

What this means is well-known but sometimes difficult to apply because "it is, at heart, a rule of subjectivity." *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984). The test is described thusly: " 'In determining whether an affidavit sufficiently establishes the probable cause necessary for issuance of a warrant, we employ the totality of the circumstances analysis enunciated in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and adopted by (the Georgia Supreme) (C)ourt in *State v. Stephens*, [supra], with the admonition that prudence counsels that *Gates* be considered as the *outer limit* of probable cause. Under that analysis, the task of the issuing magistrate

is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In addition, (the Georgia Supreme) (C)ourt has cautioned attesting officers and magistrates to make every effort to see that supporting affidavits reflect the maximum indication of reliability.' (Citations, punctuation and emphasis omitted.) [Cit.]" (Emphasis supplied.) *Eaton v. State*, 210 Ga. App. 273 (1) (435 SE2d 756) (1993). The magistrate's decision is to be based on " ' "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." ' " *Curry v. State*, 255 Ga. 215, 217 (1) (336 SE2d 762) (1985). *Munson v. State*, 211 Ga. App. 80 (438 SE2d 123) (1993), illustrates this.

We first address the question of the source of the information. The person was mischaracterized as a "concerned citizen." Neither the affiant nor the officer who spoke with the caller knew anything about this person other than that it was a female who was, in Officer Knowles' words, "a well-spoken black lady," a fact not conveyed to the magistrate. From the tenor of the call, it could be inferred that her motive was to have Stewart apprehended. The State conceded in the hearing and here, correctly, that she was merely an anonymous tipster.

Veracity and basis of knowledge of the informant are major considerations, *Langford v. State*, 213 Ga. App. 232, 233 (1) (444 SE2d 153) (1994), and as to these matters the affidavit is silent, except to the extent the veracity of the information reflects on the source. The officer explained at the motion hearing that the caller hung up before they could get additional information. Who the caller was, how she obtained the information, and what she personally knew, all remained a mystery.

However, we have specifically stated that "although information regarding the reliability of the informant is highly relevant to the totality of the circumstances determination, the absence of significant information regarding reliability is not necessarily fatal to an affidavit." *Munson v. State*, supra at 82.

" '[E]ven if an officer cannot provide information regarding the veracity of an informant or the basis of his knowledge, a tip may be proved reliable enough to provide probable cause if portions of the tip are sufficiently corroborated. [Cit.]' " *Langford*, supra at 234. *State v. Stephens*, supra at 183, discusses the value of independent corroboration. It "will generally need to be a prediction of future behavior, as in *Gates*, or something similar — that is, inside information not avail-

able to the general public." *State v. Bryant*, 210 Ga. App. 319, 321 (436 SE2d 57) (1993).

Officers knew that the location of Stewart's girl friend's apartment was as given and verified the name under which utilities were listed for it, i.e., Gwendolyn Green, whose name matched the nickname "Gwinnie."[1] The affiant also drove by the residence to assure that someone was there before she obtained the warrant, corroborating the caller's information to this degree. However, this drive-by was not included in the affidavit. Nevertheless, the graphically detailed nature of the information, the caller's express naming of "Donald Stewart," and the knowledge of Stewart and of the location as the residence of Stewart's girl friend, all factored into the veracity of the information. Stewart's long criminal history, including repeated drug offenses, was corroborative of the information that he currently possessed cocaine. It is enough with all the other circumstances to lift the information from what we must categorize as "rumor." *Eaton*, supra at 275.

The lack of further verification of the information is explained by the patent desire to act quickly, if in fact children were coming home from school, as the affidavit was signed at 1:26 p.m. The officers largely corroborated, by investigation and information already had, the portions of the tip which could be corroborated.

The information presented in the affidavit and the incorporated criminal history sheet provide a sufficient basis for concluding that, based on practical common sense, there was a "fair probability" in the words of *Illinois v. Gates*, supra at 238-239, that contraband would be found in the place for which, or on the persons for whom, the warrant was issued. See *Gary v. State*, supra at 577.

Consequently, the warrant issued on the strength of it was valid, and the trial court did not err in denying Stewart's and Jackson's motions to suppress the evidence. Cf. *State v. Goodrich*, 209 Ga. App. 280 (433 SE2d 390) (1993); *McRae v. State*, 204 Ga. App. 234 (418 SE2d 796) (1992).

*Judgments affirmed. Andrews and Johnson, JJ., concur.*

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 29, 1995 — 

*Kenneth W. Musgrove, Lewis R. Lamb,* for appellants.

---

[1] It was later discovered that the officer who checked the utility record mistakenly identified Ms. Green as the occupant of apartment D, whereas she lived in apartment C; Stewart's girl friend Sandra Jackson, the co-defendant, lived in apartment D, which the officer who received the call knew to be that of Stewart's girl friend although he did not know her name.

*Britt R. Priddy, District Attorney,* for appellee.