## A03A1688. PORTER v. THE STATE.
### (591 SE2d 436)

ANDREWS, Presiding Judge.

A Douglas County jury found Willie Carl Porter guilty of two counts of theft by receiving, seven counts of burglary, and one count of felony obstruction of an officer. On appeal, Porter claims the trial court erred in failing to grant his motions to suppress (1) evidence resulting from the initial stop and subsequent search of a red Jeep Cherokee he was driving on January 6, 2000, (2) evidence seized in the execution of a search warrant for the residence of Talitha Desiree Leever, and (3) his in-custody statement to Investigator James Harrell. Porter also claims the trial court erred in allowing improper similar transaction evidence, in failing to direct a verdict in his favor on the burglary counts, and in failing to charge the jury on theft by receiving as a lesser included charge of burglary. For reasons that follow, we affirm.

1. Porter contends the trial court erred in denying his motion to suppress the results of the search of the red Jeep Cherokee he was driving on January 6, 2000, because the police did not have reasonable, articulable suspicion to stop the Jeep to question him. We disagree.

On review of the grant or denial of a motion to suppress, this Court "construe[s] the evidence most favorably to uphold the findings and judgment of the trial court, and we will not disturb the trial court's findings on disputed facts and credibility unless those findings are clearly erroneous." (Citation omitted.) *Vaughn v. State*, 247 Ga. App. 368 (1) (543 SE2d 429) (2000). So viewed, the evidence shows that around 9:20 a.m. on January 6, 2000, Bonita Martin and Susan Arnett were home when they noticed a red Jeep Cherokee pull into their driveway. After the Jeep remained in the driveway without moving for about five minutes, Martin went to the front door to investigate. Martin saw a teenage girl peering into the garage windows. When Martin asked the girl what she was doing, the girl responded that she was looking for someone with her school books. The girl then got into the Jeep with a man that Martin judged to be "a good bit older than her," and the Jeep drove away. Martin noticed a small spare tire in place on the rear of the Jeep. Martin discussed the incident with Arnett and they decided to call the police.

Martin thought the incident was suspicious because school would have been in session, the Jeep had remained in the driveway for a long time without anyone ringing the doorbell, and because of the age difference of the couple in the Jeep. Arnett telephoned the police to report that someone was "casing" their house or the neighborhood. Police were also aware of a postal worker's report the pre-

ceding day of a red vehicle with a man and woman inside acting suspiciously in the vicinity of a burglary.

On the morning of January 6, 2000, Maria Leaman was on patrol duty for the Douglas County Sheriff's Department. She received a "lookout" over the police radio. Leaman was informed that two people, a man and woman, had pulled into a lady's driveway in a red Jeep Cherokee, and that they had walked around her house, had seemed suspicious, and when confronted gave a "lame" excuse as to why they were there. Leaman was also told that a spare tire was in place on the left rear of the vehicle. About five minutes after receiving the lookout, Leaman saw a red Jeep Cherokee and followed it into a subdivision, where it turned into a residential driveway. Leaman turned into the driveway and parked behind the Jeep. Leaman did not turn on her lights and siren. The windows of the Jeep were tinted dark, and Leaman could not tell who was in the vehicle. Leaman thought the residents of that address could be in the Jeep.

Leaman called in the tag number of the Jeep; she then got out and began walking toward the driver's side of the vehicle. As she walked up, she noticed the spare tire on the back of the Jeep, which was smaller than the other tires. About this time, Deputy Jeff Davis arrived, running his siren and lights, and pulled in behind Leaman's vehicle. Davis had personally worked on two residential burglaries in the area and knew that police had developed a lead on a red vehicle. Davis testified that he responded with lights and sirens activated because weapons had been stolen in the previous burglaries and because Leaman reported she was in contact with the suspect vehicle.

The window on the driver's side of the Jeep was rolled down and Leaman saw a man and woman inside. Leaman asked the driver, later identified as Porter, who he was and what he was doing, but he did not respond and instead began rummaging through the console between the two seats. Leaman then asked Porter to step out of the vehicle, and she intended to handcuff him and check him for weapons. Porter did not respond. Leaman opened the door of the Jeep, and Porter rushed out of the vehicle, knocking Leaman down, then jumped over a fence and ran from the scene. Leaman chased Porter until she heard the sound of gunshots, and then returned to her vehicle. When she got back to the patrol car she learned that the Jeep had been reported stolen. Porter was tracked by K-9 officers and arrested later that day.

While Leaman was asking Porter to exit the Jeep, Davis went to the passenger's side of the vehicle and removed the woman, Leever. After Porter knocked Leaman down, Davis put Leever in a patrol car and went to assist Leaman. Off-duty police officer Roger Jones saw Leaman and Davis chasing Porter through a neighbor's yard, and

came outside to help. Jones noticed Leever, who had managed to kick out the windows of the patrol car and was running down the street toward Jones's house. Jones chased Leever, but she pulled out a gun and shot him twice. Davis was able to locate and take Leever into custody approximately ten to fifteen minutes after she shot Jones.

An officer may conduct a brief investigative stop of a vehicle if the stop is justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Footnote omitted.) *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968). A court must consider whether, under the totality of the circumstances, the police officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). Porter claims that the police did not have a reasonable, articulable suspicion to detain him and that therefore evidence stemming from his arrest and the subsequent search of the Jeep and of Leever's home should have been suppressed. In particular, Porter contends that Leaman's actions were taken only because she saw a red Jeep, and not because of any suspicious activity, and because she saw a mixed race couple inside the Jeep after approaching it.

When Leaman pulled up behind the stationary vehicle, she did not have her lights or siren activated, and her first action after approaching the Jeep was to ask for identification. "A police officer may approach a citizen, ask for identification, and freely question a citizen with or without any basis or belief that the citizen is involved in criminal activity, as long as the officer does not detain the citizen or create the impression that the citizen may not leave." *Ransom v. State*, 239 Ga. App. 501, 503 (1) (521 SE2d 430) (1999). When Davis arrived with his sirens and lights activated, the occupants of the Jeep may have been under the impression that they were not free to leave. But roughly contemporaneous to Davis's arrival, Leaman had noted the spare tire fitted on the back of the Jeep and found the occupants of the Jeep matched those described in the lookout for the vehicle. At that point, the Jeep and its occupants could be specifically identified as connected to the events at the Martin residence, the Jeep was on residential property, and the occupants refused to explain what they were doing. See *Cox v. State*, 263 Ga. App. 266 (587 SE2d 205) (2003) (totality of circumstances, which included unexplained presence of van in parking lot after hours, constituted reasonable suspicion of criminal activity).

Accordingly, the police officers had reasonable suspicion of criminal activity and were authorized to conduct a brief investigatory detention. Porter was never actually detained because he fled the scene on foot, and his subsequent arrest was for probable cause. See,

e.g., *Burgeson v. State*, 267 Ga. 102 (475 SE2d 580) (1996) (flight may be a significant factor in determining probable cause). Because the Jeep was stolen, Porter had no expectation of privacy in its contents. *Sanborn v. State*, 251 Ga. 169-170 (1) (304 SE2d 377) (1983). The trial court did not err in denying Porter's motion to suppress the evidence stemming from the alleged "stop" of the red Jeep Cherokee.

2. Porter claims the trial court erred in denying his motion to suppress evidence seized during the search of Leever's residence because there was no probable cause to issue the search warrant. We disagree.

> In determining whether an affidavit provided sufficient probable cause, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.

(Punctuation and footnote omitted.) *Shivers v. State*, 258 Ga. App. 253, 254 (573 SE2d 494) (2002). As a threshold issue, we note that Porter was staying at Leever's residence, and it was implicit in the trial court's ruling on the motion to suppress that Porter had standing to challenge the search.

The information in the affidavit submitted by Lieutenant Bobby Holmes to support the issuance of the search warrant for Leever's residence included a confession made by Leever to police in which she admits to having been involved in recent burglaries and also admits there was stolen property at her residence. But, at the hearing on motion to suppress, the State stipulated that the trial court should not consider the portion of the affidavit recounting Leever's confession in determining whether there was probable cause to issue the search warrant.

In arguing this appeal, the State references Leever's confession in its argument that the affidavit showed probable cause. But, we do not see how the State could ask the trial court to excise that part of the affidavit and then insinuate that this Court should consider it.

There is precedent for considering the remainder of an affidavit after a portion has been excised. For instance, false statements in an affidavit submitted in support of a search warrant may be excised and the remaining content examined to determine if the affidavit was sufficient to establish probable cause. *Redding v. State*, 192 Ga.

App. 87 (383 SE2d 640) (1989). We will, as the trial court did, only consider the portion of the affidavit which does not include Leever's confession.

The unexcised portion of the supporting affidavit, standing alone, may not show probable cause for the search of Leever's residence. The affidavit provides that there had been two recent burglaries; a black male and white female had been seen near the scene of one of the burglaries; a black male and white female driving a red Jeep Cherokee were seen acting "suspicious" near a residence; a vehicle matching that description had been stopped by a deputy; and the occupants of the vehicle had fled on foot and the female had been apprehended. However, in determining whether probable cause exists, the issuing magistrate may consider any sworn testimony given to the magistrate as well as facts in the affidavit. See *Dobbins v. State*, 262 Ga. 161, 163 (3) (415 SE2d 168) (1992). When asking for the search warrant, Lieutenant Holmes told the judge that Leever shot an officer while in custody and her male companion was currently "on the run." Considering the totality of the circumstances, including the affidavit as excised, and the oral testimony given to the issuing judge, we conclude that probable cause existed to search Leever's residence for evidence of a crime. Leever's companion was then at large, making her residence a logical place to search for him. Leever fled after being stopped by police, and shot an officer in the process, making it reasonable to conclude she did so with a consciousness of guilt connected to her "suspicious" activities around the residence where she was seen earlier. Accordingly, we conclude that the trial court did not err in denying Porter's motion to suppress.

3. Porter claims the trial court erred by failing to suppress his in-custody statement to Investigator Harrell because his statement was improperly induced by hope of benefit. Under OCGA § 24-3-50, "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." Porter claims Harrell promised that if Porter told the truth, Porter would not have to go to a jury trial and that Porter should tell the truth so the police could help him. The transcript does not support this characterization. At the *Jackson-Denno* hearing, defense counsel asked Harrell whether he told Porter "if he would cooperate with you and just tell the truth that that would make him avoid having to have a jury trial?" Harrell denied suggesting to Porter that Porter's case would not have to go to court, and although Harrell agreed that "something along those lines" may have come up, he did not admit to making the statement to Porter. However, Harrell did admit to saying to Porter, "you better decide right now whether you're going to tell the truth and you're going to let us try to help you or whether you're just going to lie?" Harrell also

agreed telling Porter that if Porter lied, "we're going to have to prove it. . . . You're going to make it go into court in front of twelve people."

After the *Jackson-Denno* hearing, the trial court concluded that Harrell did not make an improper promise to help Porter. We agree. "[W]e have construed the 'slightest hope of benefit' as meaning the hope of a lighter sentence." *Cooper v. State*, 256 Ga. 234, 235 (2) (347 SE2d 553) (1986). Accordingly, the offer by Harrell to "help" Porter if he told the truth did not render Porter's statement inadmissible. *Griffin v. State*, 257 Ga. App. 167, 168 (570 SE2d 611) (2002); *Stephens v. State*, 164 Ga. App. 398, 399 (3) (297 SE2d 90) (1982). We also conclude Harrell's statement to Porter that he would face a jury trial if he lied was not a promise of an improper benefit.

4. Porter claims the trial court erred by allowing similar transaction evidence. Absent an abuse of discretion, we will not disturb a trial court's determination that similar transaction evidence is admissible. *Condra v. State*, 238 Ga. App. 174, 175 (2) (518 SE2d 186) (1999). "[S]imilar transaction evidence may be admitted if it is substantially relevant for some purpose other than to show a likelihood that the defendant committed the crime on trial because he is a person of criminal character." (Citation omitted.) *Howard v. State*, 262 Ga. App. 198, 200 (3) (585 SE2d 164) (2003).

After a hearing, the trial court ruled that certain similar transactions could be introduced into evidence, including the four transactions challenged by Porter: July 14, 2000 and June 3, 2001 confrontations between Porter and police officers while Porter was being held in the jail; the theft of the red Jeep Cherokee; and a November 18, 1999 theft of a Ford Expedition. The two jailhouse confrontations involved physically resisting and striking law enforcement officers. We conclude that the trial court properly admitted these transactions to show Porter's course of conduct in resisting law enforcement officers in the performance of their duties. The evidence was relevant to the obstruction of an officer charge in connection with Porter's conduct toward Leaman. The evidence of the theft of the red Jeep Cherokee was directly relevant to the theft by receiving charge in that it showed Porter knew the Jeep was stolen. The evidence also showed that Porter stole the red Jeep Cherokee and a Ford Expedition in a similar manner. Both instances involved Porter entering the vehicle in a parking lot while the owner was near, resulting in physical contact with the owner. We cannot say that the trial court abused its discretion in allowing evidence of the theft of the Ford Expedition because the evidence is probative of whether Porter also stole the Jeep Cherokee and so supports the theft by receiving charge with respect to the Jeep Cherokee. However, if the trial court had erred in allowing evidence concerning Porter's theft of the Ford Expedition, it

is highly probable that its admission did not contribute to the judgment. See *Tackett v. State*, 257 Ga. App. 292, 295 (4) (570 SE2d 720) (2002) (applying harmless error test to erroneous admission of unrelated crime).

5. Porter claims the trial court erred by not directing a verdict in his favor on the burglary charge. We disagree. In reviewing the denial of a motion for directed verdict, we construe the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002). The evidence shows that property which had been reported stolen from various residences was found at the house where Leever and Porter were staying. Recent unexplained possession of property may be probative evidence of burglary. *Gray v. State*, 260 Ga. App. 197, 198 (1) (581 SE2d 279) (2003). Evidence also showed that shoe prints made on the premises of two burglarized residences belonged to shoes owned by Porter. Accordingly, the trial court did not err in denying Porter's motion for a directed verdict.

6. Lastly, Porter claims that the trial court erred by refusing to charge the crime of theft by receiving as a lesser included offense of burglary. He argues that the evidence did not exclude the possibility that Porter was in possession of stolen goods but did not commit the offense of burglary. "[A] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990). However, we have consistently held that theft by receiving is not a lesser included offense of burglary. *Faust v. State*, 189 Ga. App. 426, 427 (2) (375 SE2d 889) (1988); *State v. Bolton*, 144 Ga. App. 797, 798 (1) (242 SE2d 378) (1978); *Wells v. State*, 127 Ga. App. 109 (192 SE2d 567) (1972). Where the indictment avers that the defendant is the thief by way of burglary, it is not error for the court to refuse to charge theft by receiving as a lesser included offense. *Wells*, supra, 127 Ga. App. at 110.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED DECEMBER 3, 2003.

*Lee W. Fitzpatrick, Alison K. Frutoz*, for appellant.
*David McDade, District Attorney, Paul J. Miovas, Jr., James E. Barker, Assistant District Attorneys*, for appellee.