## S07A0139. THE STATE v. HUNTER.
(646 SE2d 465)

MELTON, Justice.

The State appeals from the grant of defendant Michael Hunter's motion to suppress,[1] contending that the trial court erred in concluding that the police provided insufficient information to the magistrate to support a showing of probable cause to search Hunter's suspected residence.[2] Because we agree with the State that the police officer's affidavit at issue here provided a substantial basis for the magistrate to determine that probable cause existed to justify the issuance of the search warrant, we reverse.

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants. A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

(Citations and punctuation omitted.) *DeYoung v. State*, 268 Ga. 780, 787 (7) (493 SE2d 157) (1997). The test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the "factual and practical considerations of everyday life on which reasonable and prudent men . . . act." (Citation and punctuation omitted.) *Curry v. State*, 255 Ga. 215, 217 (1) (336 SE2d 762) (1985). Moreover, even doubtful cases should be resolved in favor of upholding a warrant. See *Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996).

With these principles in mind, the record reveals that on October 27, 2004, Ronnie Davis was shot and killed outside of his apartment. As outlined in an affidavit provided to the issuing magistrate by

---

[1] Hunter was indicted for, among other things, murder in connection with the shooting death of Ronnie Davis.

[2] Even though the residence that was searched was not in Hunter's name, the State does not challenge the trial court's finding that Hunter has standing to challenge the warrant that was issued here.

Detective Mark Smith, the police interviewed witnesses who connected Hunter and two other men to the shooting. The witnesses stated that Hunter and the other men fled the scene after the shooting. The investigation also revealed that Hunter, the suspected leader of a narcotics ring in north Fulton County, had no recent job history; no vehicles registered to him; no home or apartment in his own name; and no utilities or phone listed in his name. Hunter's last known address was a residence that he shared with Chequanda Milteer. Witnesses identified Hunter as a person who had frequent contact with Milteer, and a person who had been seen driving Milteer's vehicles. Milteer had also listed Hunter as her "employer" for purposes of obtaining her current apartment. At the time that police arrested Hunter, he was driving a car that was registered to Milteer. Before he was arrested, however, Hunter attempted to flee in the direction of Milteer's apartment. Based on this information from Detective Smith's affidavit, the magistrate issued a search warrant allowing the police to search Milteer's residence for, among other things, firearms, ammunition, and narcotics. It was later revealed at the motion to suppress hearing that, at the time that the magistrate issued the warrant, Detective Smith had not informed the magistrate that Hunter had not been seen at Milteer's current apartment despite six weeks of police surveillance there, and that Hunter was half a mile away from Milteer's apartment at the time that he allegedly attempted to flee in the direction of the apartment when he was arrested.

Without considering the additional information that Detective Smith failed to include in his affidavit, the affidavit on its face provided the magistrate with enough information to come to the "practical, common-sense" conclusion that there was a fair probability that evidence of a crime could be found at Milteer's residence. Specifically, Hunter lived with Milteer in at least one of her previous apartments; Hunter had no current address under his own name; Milteer listed Hunter as her "employer" for purposes of obtaining her new apartment (even though Hunter had no recent job history); a witness connected Hunter to a murder and to an illegal narcotics operation in north Fulton County; witnesses saw Hunter driving vehicles registered to Milteer; police found Hunter driving a car registered to Milteer and Hunter had no car in his own name; and Hunter ran in the direction of Milteer's apartment when police attempted to arrest him. Based on the information contained in the affidavit, the magistrate was able to come to the common-sense conclusion that Hunter, having lived with Milteer in the past, having no independent address of his own, and having been found driving Milteer's car, might have been currently residing with Milteer, and

that evidence of criminal activity could be found at Milteer's residence. See, e.g., *Stewart v. State*, 217 Ga. App. 45, 48 (456 SE2d 693) (1995) (probable cause existed to search defendant's girlfriend's apartment based on anonymous tip and defendant's criminal history, even though apartment utilities were in another person's name).

Even after excising the inaccurate information from the affidavit and inserting the more accurate information derived from Detective Smith's testimony at the motion to suppress hearing (see *Moss v. State*, 275 Ga. 96, 102 (13) (561 SE2d 382) (2002)), the magistrate still had a substantial basis for concluding that probable cause existed to support the issuance of the search warrant. Assuming that the detective deliberately withheld from the magistrate (1) the fact that Hunter was half a mile away from Milteer's apartment when he allegedly ran in the direction of the apartment, and (2) the fact that the police had not seen Hunter at Milteer's apartment during their six weeks of surveillance, this omitted information would not invalidate the finding of probable cause.[3] Regardless of whether or not Hunter ran in the direction of Milteer's apartment when police attempted to arrest him, Hunter had already been connected to Milteer through their prior co-habitation; being listed as Milteer's "employer" on her apartment records (despite having no recent employment history or home in his own name); and being seen driving Milteer's vehicles both before and when he was arrested. Moreover, the police did not have to observe Hunter living with Milteer to reach the logical conclusion based on the information provided to them that the pair could still be living together. *Stewart*, supra, 217 Ga. App. at 48.

In light of the substantial deference that we must give to a magistrate's finding of probable cause, and in light of the evidence supporting the issuance of the search warrant here, we conclude that the trial court erred in granting Hunter's motion to suppress.

*Judgment reversed. All the Justices concur, except Benham and Thompson, JJ., who dissent.*

---

[3] This Court in no way condones Detective Smith's decision to conceal relevant information from the magistrate in seeking the search warrant. Nor can this Court make any assumptions as to why the issuing magistrate did not place Detective Smith under oath and ask him additional questions before agreeing to issue the search warrant. Nonetheless, our role under the governing legal standard is to determine whether, while giving substantial deference to the magistrate's decision to issue the warrant, the magistrate had a substantial basis for concluding that probable cause existed. *DeYoung*, supra, 268 Ga. at 787 (7). Where, as here, the circumstances reveal that the magistrate had a substantial basis for finding probable cause, even when considered in light of Detective Smith's omissions, the evidence seized in connection with the warrant should not be suppressed. *Stewart*, supra, 217 Ga. App. at 48.

THOMPSON, Justice, dissenting.

In my view, the magistrate did not have a substantial basis to conclude that probable cause existed to search Milteer's apartment. Simply put, probable cause requires a "fair probability"; it cannot rest upon "might have been" or "could still be."

The application for the warrant was accompanied by the affidavit of Detective Mark Smith. At the time of the application, the magistrate was given no additional information, whether written or oral.

Detective Smith's affidavit reads, in pertinent part, as follows:

> On October 27, 2004 at 11:00 a.m. Ronnie Izis Davis . . . was shot and killed outside his apartment located at 1 Cedar Run. . . . Investigation revealed Ronnie Davis . . . was being sought by three individuals on the night prior to the killing and the morning of the killing. A roommate of Ronnie Davis, identified as Kivon Carter . . . advised [that] the [men] looking for Ronnie Davis were Michael Hunter . . . who is a cousin of Kivon Carter and goes by the street name "Milz," a black male who goes by the street name of "Spank Nitty," [and a third unidentified individual]. . . . Kivon Carter stated Michael Hunter was irate and Kivon Carter gave his cell phone to Michael Hunter in order for Ronnie Davis to talk to Michael Hunter. . . . [W]hile Michael Hunter was talking to Ronnie Davis on the cell phone, he, Kivon Carter, went back inside the apartment and left Michael Hunter and the two men with Hunter outside the apartment. Kivon Carter advised several minutes later Carter heard a gunshot and went outside the apartment and found Ronnie Davis lying on the sidewalk in the breezeway. . . . The three men looking for Ronnie Davis fled the scene on foot. . . . Kivon Carter stated he believed the dispute between Michael Hunter, "Spank Nitty," and Ronnie Davis was over a girl . . . identified as Davenda Jones. . . . Kivon Carter also stated Michael Hunter operates an illegal narcotics operation in the Dunwoody Place/Roswell Road area of North Fulton County.
>
> Davenda Jones was interviewed and stated she had dated the victim but had broken up with him. Davenda Jones stated she had gone out with "Spank Nitty" and that "Spank Nitty" worked for "Milz" (Michael Hunter). . . .
>
> Investigation has revealed Michael Hunter, a/k/a "Milz," is the leader of a narcotics distribution ring centered in the Roswell Road and Dunwoody Place area of North Fulton County. The investigation has also revealed the victim, Ronnie Davis, sold marijuana as a street level dealer in the

same area. It is believed the dispute between Michael Hunter and Ronnie Davis may stem from a turf war concerning who could sell narcotics in the area.

Investigation has revealed Michael Hunter has no recent job history, no vehicles registered to him, no home or apartment leased in his name, no utilities or cell phone listed in his name. Fulton County police are holding an active murder warrant for Michael Hunter.

Investigation has also revealed Chequana Milteer, who currently is listed at 2062-E Pernoshal Court in Dunwoody, DeKalb County, Georgia, has repeatedly had contact with Michael Hunter and Michael Hunter has been seen driving vehicles which are registered to Chequana Milteer. Investigation has also revealed community members in two separate apartments [in] which Milteer resided have identified pictures of Michael Hunter as an individual seen at the residence of Chequana Milteer. Chequana Milteer has also listed Michael Hunter as her employer on her current apartment application and shows previous residence which is the same a [sic] Michael Hunter in Gwinnett County.

It is believed Michael Hunter is utilizing the residence at 2062-E Pernoshal Court in DeKalb County as a safe house and the nucleus of a narcotics operation. It is also believed Chequana Milteer is acting in conjunction with Michael Hunter, enabling the harboring of the fugitive Michael Hunter, as well as the functioning of an illegal narcotics ring.

On 12-29-04 at 0100 hours, Michael Hunter was arrested at the Dunwoody Park Apartments in DeKalb County by the DeKalb County police. Police officers observed Michael Hunter driving a blue 1998 Oldsmobile Cutlass . . . which is registered to Chequana Milteer. Michael Hunter then exits the vehicle and a foot chase ensued. He then runs from the police toward Chequana Milteer's address located at 2062-E Pernoshal Court. Michael Hunter was taken into custody after a physical altercation with the police officers.

At the hearing on the motion to suppress, Detective Smith testified that when he applied for the warrant he did not inform the issuing magistrate that Milteer's apartment had been under surveillance for the previous six weeks, but that no police officer had seen Hunter during that entire time. Detective Smith also made it clear at the suppression hearing that Hunter had not been identified by the residents at Milteer's *current* apartment complex; that the reference in his affidavit to "community members" who saw Hunter at Milteer's

apartments was to residents at Milteer's *previous* apartments. Finally, with regard to Hunter's arrest and attempt to flee "toward Chequana Milteer's address," Detective Smith acknowledged that the place where Hunter was apprehended is approximately one-half mile from Milteer's apartment.

Our duty, in cases of this kind, is to determine if the magistrate had a substantial basis to conclude that probable cause existed to search the premises. *Lemon v. State*, 279 Ga. 618 (619 SE2d 613) (2005). Viewed under the totality of the circumstances, *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984), and giving due consideration to the information which Detective Smith omitted from his affidavit, *Redding v. State*, 192 Ga. App. 87 (383 SE2d 640) (1989) (false statements should be deleted and omitted truthful statements included to determine if affidavit is sufficient to show probable cause), I must conclude that the affidavit failed to demonstrate probable cause to believe that the items sought would be found at Milteer's apartment. That is because the affidavit is devoid of any *facts* showing a "fair probability" that Hunter used Milteer's apartment as a residence or place of business at or near the time the crime occurred. Compare *McClain v. State*, 267 Ga. 378, 388 (11) (477 SE2d 814) (1996) (reasonable for officer to infer that defendant returned to *his* residence after early morning shooting) with *State v. Brantley*, 264 Ga. App. 152, 154 (589 SE2d 716) (2003) (State failed to show fair probability that items sought would be found at defendant's brother's residence). That Hunter drove Milteer's vehicles, had no apparent home of his own, and may have lived with Milteer in the past, sheds no light on the question of whether Hunter used Milteer's apartment as a hiding place for evidence of the crime. The fact remains that the affidavit fails to show that Hunter ever lived in or even stayed at Milteer's apartment. Compare *Porter v. State*, 264 Ga. App. 526, 529 (2) (591 SE2d 436) (2003) (girlfriend's residence was logical place to search for defendant because he had been staying in girlfriend's residence and was "on the run") with *Tuten v. State*, 156 Ga. App. 758, 760 (275 SE2d 796) (1980) (that contraband had to be "somewhere" does not provide probable cause to search defendant's trailer in light of informant's statement that defendant put contraband in another location) (Shulman, J., concurring).

I respectfully dissent. I am authorized to state that Justice Benham joins in this dissent.

DECIDED MAY 14, 2007 —
RECONSIDERATION DENIED JULY 13, 2007.

*Paul L. Howard, Jr., District Attorney, Ayana C. Curry, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellant.
*Larry D. Wolfe, Michael J. Antoniolli*, for appellee.