A09A1356. IN THE INTEREST OF A. Z., a child.
(687 SE2d 887)

PHIPPS, Judge.

The juvenile court adjudicated 16-year-old A. Z. delinquent for possession of firearms by a person under the age of 18 and for aggravated assault, and it entered an order of commitment placing him in restrictive custody for these actions. The court also adjudicated A. Z. a designated felon.[1] On appeal, A. Z. asserts that the juvenile court erred in denying his motion to suppress evidence seized from his home. He also contends that there was insufficient evidence to prove he committed the acts for which he was adjudicated delinquent, and that thus the juvenile court erred in denying his motion to dismiss.

For reasons set forth below, we find that the court did not err in denying the motion to suppress. We further find that there was sufficient evidence to prove that A. Z. was in possession of firearms, supporting his adjudication of delinquency on that ground. But we find that the court did not make the necessary factual finding to conclude, based on the testimony of a single witness, that A. Z. had committed acts constituting aggravated assault.[2] Thus, we affirm the adjudication of delinquency but vacate the adjudication of A. Z. as a designated felon and the dispositional order of commitment. Because

---

[1] See OCGA § 15-11-63 (a) (2) (B) (ii) (act which, if done by adult, would constitute aggravated assault is "designated felony act" for which juvenile court may impose restrictive custody).

[2] See OCGA § 24-4-8 (testimony of witness who is accomplice to a felony requires corroboration).

YALE LAW LIBRARY

we find the evidence sufficient to support a factual finding that would allow the witness's uncorroborated testimony, and because the witness's testimony was sufficient to support a finding that A. Z. had committed acts constituting aggravated assault, the juvenile court may conduct another hearing on the aggravated assault issue.[3] Accordingly, we remand for proceedings not inconsistent with this opinion.

The case arose from a shooting into an occupied house. H. C., a teenaged girl who was at the scene of the shooting, told police that A. Z. was the shooter. Based on her statement and other information obtained through investigation, police obtained a warrant to search A. Z.'s home, where they found, among other things, two firearms, neither of which was related to the shooting. The state filed a petition alleging that A. Z. was delinquent for acts constituting aggravated assault and for possession of firearms by a person under the age of 18.

1. A. Z. contends that the court erred in denying his motion to suppress because the affidavit upon which the search warrant was issued failed to show probable cause. The state counters that A. Z.'s motion was deficient because it did not allege that the affidavit contained a deliberate falsehood or that it showed a reckless disregard for the truth. The Supreme Court of Georgia has overruled the line of cases requiring such specific allegations in a motion to suppress.[4] Nevertheless, we find that the juvenile court did not err in denying the motion.

In *State v. Palmer*,[5] the Supreme Court of Georgia reiterated the standards applicable to the various levels of judicial scrutiny involved in the warrant process:

> A search warrant will only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed. The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The trial court may then examine the

---

[3] See *In the Interest of M. S.*, 292 Ga. App. 127, 128 (2) (664 SE2d 240) (2008) (where evidence was sufficient to support charge on which delinquency adjudication was based, court may retry juvenile on charge without violating double jeopardy clause).

[4] See *Watts v. State*, 274 Ga. 373, 375 (1) (552 SE2d 823) (2001).

[5] 285 Ga. 75 (673 SE2d 237) (2009).

issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.[6]

On appeal, we "determine if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the search warrant."[7]

In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.[8]

The search warrant in this case was issued based on the affidavit of the investigating officer who had taken H. C.'s statement. In the affidavit, the officer stated that she had reason to believe that there was then being concealed at a particular address "[g]ang paraphernalia, which consist[ed] of writing, papers, signs, pocket rags, and firearms." The affidavit further provided:

Affiant . . . has been investigating an Aggravated Assault and Participation in criminal street gang activity. [On] February 22, 2008[,] [four others] and [A. Z.,] who are member[s] of [a] street gang, went to [an address] with the intent to kill [a particular person]. Prior to going to this location, the subjects gathered at [one person's] home and planned out this assault. [A. Z.] then got an unknown type firearm from a [particular person]. They all then walked to the . . . residence, where [A. Z.] then shot into the front door of the residence five times. There were four occupants inside the residence at the time of this assault. Based on the evidence in this case, we asked that the residence of [A. Z.]

YALE LAW LIBRARY

---

[6] Id. at 77-78 (citations omitted).

[7] Id. at 78 (citation and punctuation omitted).

[8] Id. (citations and punctuation omitted).

be searched. . . . Through the water, gas, and lights files, a [particular person] resides at this location. [A. Z.] lives at [the address for which the warrant was sought]. Surveillance verified [the address] as the structure being described.

The affidavit did not mention the officer's interview with H. C. or describe specific statements made by the girl.

(a) A. Z. contends that the affidavit did not provide a substantial basis for the magistrate's finding of probable cause that evidence of the shooting could be found at his house because it was based on the statement of an informant, H. C., who initially identified the shooter only by a nickname and never told the officer that the gun was in his house. But an affidavit in support of a search warrant request may include information obtained from an officer's investigation as well as from an informant.[9] Although the officer did not indicate in the affidavit that she had received some of the information contained therein from an informant, she informed the magistrate of this fact through oral testimony.[10] Moreover, the Supreme Court of Georgia has held that a magistrate had probable cause to issue a search warrant of a defendant's house based on an affidavit indicating that a suspect committed a crime and providing the suspect's address, citing the "practical, common-sense conclusion that there was a fair probability that evidence of [the] crime could be found at [the suspect's] residence."[11] Similarly, the affidavit at issue here stated that A. Z. had committed a crime and it provided A. Z.'s address. This evidence provided a substantial basis for the magistrate's finding of probable cause.[12]

(b) A. Z. asserts that there was no probable cause for the warrant because the lapse of approximately four weeks between the shooting and the issuance of the warrant rendered stale the information upon which it was based. The Supreme Court of Georgia, however, has held that the mere passage of time will not render information stale,

---

[9] See *State v. Hunter*, 282 Ga. 278, 279-280 (646 SE2d 465) (2007) (affidavit containing information obtained both from informants and police investigation supported magistrate's finding of probable cause).

[10] See *Chapman v. State*, 257 Ga. 19, 20 (2) (354 SE2d 149) (1987) (officer's oral testimony to magistrate may supplement facts presented in affidavit to show probable cause for search warrant); *Flewelling v. State*, 300 Ga. App. 505, 510 (2) (a) (685 SE2d 758) (2009) (same).

[11] *Hunter*, supra at 279 (punctuation omitted); see *McClain v. State*, 267 Ga. 378, 388-389 (11) (477 SE2d 814) (1996) (trial court did not err in denying motion to suppress evidence seized from suspect's residence following shooting, where warrant affidavit contained information from eyewitness describing crime and information from which suspect's address was traced; it was reasonable for officer to infer that suspect returned to residence after shooting).

[12] See *Hunter*, supra.

but rather is one of several factors to consider in the probable cause determination:

> The likelihood that the evidence sought [when executing a search warrant] is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: *the character of the crime, of the criminal, of the thing to be seized* (perishable and easily transferable or of enduring utility to its holder?), *of the place to be searched* (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later.[13]

And in *Carruthers v. State*,[14] the Court held that six-month-old information concerning a suspect's attire and possession of a handgun on the night of a murder was not stale, but instead supported the magistrate's issuance of a warrant to search the suspect's residence for the clothing and gun.[15] The Court cited as one of the pertinent circumstances in that case the suspect's limited opportunity to dispose of the items.[16]

Considering the totality of the circumstances here, and giving due deference to the magistrate's finding of probable cause, we find that the magistrate had a substantial basis for concluding that the items identified in the search warrant could still be found at A. Z.'s residence.[17] The items were not perishable.[18] They were in the nature of personal possessions, sought at a location where there was a fair probability that the teenager would have stored them (his residence),[19] and unlikely to be affected by the approximately four-week time lapse.[20] Under these circumstances, we find no error in the trial court's denial of the motion to suppress.

---

[13] *Lemon v. State*, 279 Ga. 618, 622 (2) (619 SE2d 613) (2005) (citations and punctuation omitted); see *Lewis v. State*, 255 Ga. 101, 104 (2) (335 SE2d 560) (1985) (timeliness determination involves consideration of the totality of the circumstances to determine probability that conditions described in testimony still existed).

[14] 272 Ga. 306 (528 SE2d 217) (2000), overruled on other grounds, *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008).

[15] *Carruthers*, supra at 312-313 (5).

[16] Id. at 313.

[17] See *Hunter*, supra at 280; *State v. Lejeune*, 277 Ga. 749, 753 (2) (594 SE2d 637) (2004).

[18] See *Lemon*, supra at 621-622 (finding items such as computers and papers were not perishable).

[19] See *Hunter*, supra at 279.

[20] See generally *Birkbeck v. State*, 292 Ga. App. 424, 434 (6) (665 SE2d 354) (2008)

Cases cited by A. Z. do not compel a different conclusion. Unlike here, *Land v. State*[21] involved an affidavit that did not contain the date on which the crime occurred and thus did not provide the magistrate with an opportunity to evaluate the passage of time in making its probable cause determination. And in *State v. Brantley*,[22] the court stressed as a pertinent circumstance an attenuated link between the suspect and the location for which the search warrant was issued.

2. A. Z. contends that the court erred in denying his motion to dismiss, asserting that the evidence was insufficient to support his delinquency adjudication. On appeal, we view the evidence in the light most favorable to the adjudication to determine whether a rational trier of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.[23]

(a) The evidence authorized the juvenile court to find that A. Z. had possessed firearms in violation of OCGA § 16-11-132. At the adjudicatory hearing, an officer who searched A. Z.'s house testified to finding two .22 caliber handguns in a bedroom along with A. Z.'s school report card. Although a person under 18 may produce evidence to support an affirmative defense that he was in possession of firearms with his or her parent's permission at real property under his parent's control,[24] A. Z. did not produce any such evidence. Accordingly, the court did not err in adjudicating him delinquent based on his possession of firearms.

(b) A. Z. contends that the evidence was insufficient to show that he participated in the shooting, which was the basis for the court's finding that he had committed acts constituting aggravated assault and for his adjudication as a designated felon. The only evidence presented by the state that connected A. Z. to the shooting was the testimony of H. C., who stated that A. Z. had a gun, had gone with a group of teenagers to the house, and was present when the shooting occurred. At the close of the state's evidence, A. Z. moved to dismiss the charge of aggravated assault, arguing that H. C.'s testimony alone could not support the court's finding because she was an accomplice to the shooting whose testimony required corroboration under OCGA § 24-4-8.[25] The court asked whether H. C. had been

(considering whether items were likely to be affected by passage of time in determining whether information in warrant affidavit was stale).

[21] 259 Ga. App. 860, 863 (1) (578 SE2d 551) (2003).

[22] 264 Ga. App. 152, 154-155 (589 SE2d 716) (2003).

[23] *In the Interest of M. F.*, 276 Ga. App. 402-403 (1) (623 SE2d 234) (2005).

[24] See OCGA § 16-11-132 (c) (2); *Burchett v. State*, 283 Ga. App. 271, 273 (2) (641 SE2d 262) (2007).

[25] OCGA § 24-4-8 provides, in pertinent part, that in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient." This rule has been applied

offered immunity. The state responded that the girl had not been offered immunity, stated that H. C. "was not charged at any time," and argued that the girl's testimony about her involvement in the shooting supported this conclusion. The court ruled: "The [s]tate says she's not an accomplice. Motion denied."

On appeal, in support of his argument that H. C. was an accomplice to the shooting, A. Z. points to the girl's testimony that she previously had been accosted by a boy at the boy's house; that she had wanted "something bad" to happen to the boy; that she had followed the group of teenagers to the boy's house; that she had heard members of the group state that they wanted to fight with or kill the boy; and that she had pointed out the boy's house to the group.[26] In response, the state points to H. C.'s testimony that she tried to stop the group from going to the house; that she had not known anyone in the group was going to use a gun; and that she had not intended for a shooting to occur. The record reveals that much of H. C.'s testimony about the shooting and her involvement with the shooting was ambiguous and contradictory.

We find that, based upon this evidence, whether or not H. C. was an accomplice to the aggravated assault under OCGA § 24-4-8, and thus whether her testimony required corroboration, was appropriately a factual question for the court to decide in its role as factfinder.[27] But the court expressed at the hearing that it denied A. Z.'s motion to dismiss because the *state* did not consider H. C. to be an accomplice. The state's characterization of a witness's status as an accomplice is not a proper ground for determining whether the witness's testimony requires corroboration.[28]

This posture is similar to that where a jury receives an incomplete legal charge and thus fails to make a factual finding required for a defendant's conviction.[29] In such cases, if the evidence was nevertheless sufficient to support the verdict, appellate courts have

---

to juvenile proceedings. See *In the Interest of M. W.*, 296 Ga. App. 248, 250 (674 SE2d 107) (2009).

[26] See generally *Selvidge v. State*, 252 Ga. 243, 244-245 (313 SE2d 84) (1984) (discussing definition of accomplice under OCGA § 24-4-8).

[27] See *Milton v. State*, 248 Ga. 192, 196 (2) (282 SE2d 90) (1981); *King v. State*, 277 Ga. App. 190, 193-194 (626 SE2d 161) (2006).

[28] See *Milton*, supra (fact that witness was jointly indicted with defendant does not itself render witness an accomplice for purposes of needing corroborated testimony); *Payne v. State*, 135 Ga. App. 245, 247 (1) (217 SE2d 476) (1975) (state need not have brought criminal proceedings against a witness for the same or a related offense for the witness to be an accomplice for purposes of needing corroborated testimony).

[29] See, e.g., *Bundren v. State*, 247 Ga. 180, 181-182 (2) (274 SE2d 455) (1981) (jury was not asked to make finding on essential element of one offense); *Coney v. State*, 290 Ga. App. 364, 369 (1) (659 SE2d 768) (2008) (jury was inadequately charged on essential element of offense).

reversed the convictions and remanded the cases for retrial.[30] Although H. C.'s testimony contained ambiguities and inconsistencies, and thus did not compel a finding that she was or was not an accomplice, we must construe her testimony to support the juvenile court's judgment in determining whether the evidence was sufficient to allow a rehearing on the aggravated assault charge without violating the double jeopardy clause.[31] So construed, we find her testimony sufficient to authorize a factfinder to determine that she was not an accomplice, obviating the need for her testimony to be corroborated under OCGA § 24-4-8.[32] And based on this testimony, a rational trier of fact could have found, beyond a reasonable doubt, that A. Z. had committed the act of aggravated assault.[33]

Accordingly, we hold that the court erred when, without first making the factual finding required to determine whether H. C. was an accomplice, it held that A. Z. had committed an act constituting aggravated assault based on H. C.'s uncorroborated testimony. The order adjudicating A. Z. a designated felon and the disposition order, based thereon, must be vacated. The court, however, may conduct a rehearing on the charge that A. Z. committed acts constituting aggravated assault. We thus remand the case to the juvenile court for proceedings not inconsistent with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Smith, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 20, 2009 —
RECONSIDERATION DENIED DECEMBER 10, 2009 — 

*James N. Finkelstein*, for appellant.
*Gregory W. Edwards, District Attorney*, for appellee.

---

[30] See *Coney*, supra at 373 (4) (reversing conviction and remanding for retrial).

[31] See *In the Interest of M. S.*, supra at 127.

[32] See *Milton*, supra.

[33] See OCGA § 16-5-21 (a) (2) (defining offense of aggravated assault as assault with a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury); see also OCGA § 16-5-20 (a) (defining assault as, among other things, the commission of an act which places another in reasonable apprehension of immediately receiving a violent injury).