## A09A1775. BELCHER v. THE STATE.
### (690 SE2d 875)

SMITH, Presiding Judge.

A jury found Xavier Belcher guilty of armed robbery, hijacking a motor vehicle, possession of a firearm during the commission of a felony, obstruction of an officer, and criminal trespass. Belcher appeals, challenging the sufficiency of the evidence, and asserting as error the trial court's ruling on his *Batson* challenge and the court's denial of the motion to suppress his statement to police. We find no error and affirm.

Construed in favor of the verdict, the evidence showed that a man approached the victim in a parking lot at about 6:00 a.m. The victim had just retrieved an item from his truck parked outside his place of employment. The man asked the victim if he had the time and if he had any "smokes." After a short conversation, the man pulled out a semi-automatic black and satin gun and demanded the victim's wallet. The victim told him that his wallet was inside his truck. The man walked the victim to his truck and asked him to retrieve the wallet. After looking inside the wallet, the man asked the victim to place it in the back of the truck, and then demanded the victim's cell phone. When the victim told him the cell phone was inside his office, the man walked the victim into the office at gunpoint, took the victim's cell phone, and fled in the victim's truck. The victim testified that his truck was red with a camper shell on the back, and that in the bed of the truck was a red pressure washer, orange lawnmower, and other items. He stated that he also had a pair of Panama Jack sunglasses inside the truck. The victim could not identify his assailant, but gave officers a physical description and stated that he wore a red shirt, red pants, and a red bandana on his head.

Belcher's female friend testified that Belcher picked her up that morning as she walked along the roadside. She stated that he was driving a red truck with a camper shell on the back. Belcher took her to her friend's home and later told her that he needed some help moving some items from the side of the road. The female friend helped Belcher move an orange lawnmower and a red pressure washer from the side of the road to her friend's home.

Officers arrived at the home after receiving information concerning the location of the victim's truck, information that a man and a woman were seen pushing a lawnmower and pressure washer down the street, and noticing a man fitting the armed robber's description walk up the driveway of the home. As officers proceeded to the door of the home, they observed an orange lawnmower and a red pressure washer on the front porch.

The homeowner allowed the officers to enter the house. As they

entered, officers noticed the female friend sitting in the kitchen and Belcher in the hall. Belcher picked up a gun and attempted to flee. He then began hitting one of the officers. At some point during the scuffle, Belcher broke free, ran into a bedroom, broke a window, and attempted to escape through the window. He was eventually subdued and arrested. Officers recovered a .40 caliber semi-automatic black and chrome gun in the bedroom where Belcher fled, and also recovered the victim's Panama Jack sunglasses from Belcher's person.

1. Belcher contends that the evidence is insufficient because the victim could not identify him and because two of the witnesses were drug users. Although the victim was unable to identify Belcher as the robber, Belcher's statement to police and other circumstantial evidence connected him to the crime. See *Dennard v. State*, 241 Ga. App. 794, 796-797 (527 SE2d 884) (2000). And the credibility of the witnesses is for the trier of fact. See *Troutman v. State*, 297 Ga. App. 196, 197 (1) (676 SE2d 836) (2009). The evidence presented here was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), for a rational trier of fact to find Belcher guilty beyond a reasonable doubt of armed robbery, hijacking a motor vehicle, possession of a firearm during the commission of a felony, obstruction of an officer, and criminal trespass. See *Dennard*, supra, 241 Ga. App. at 796-797 (armed robbery); *Singleton v. State*, 293 Ga. App. 755, 756 (1) (667 SE2d 711) (2008) (criminal trespass); *Helton v. State*, 284 Ga. App. 777, 779 (1) (644 SE2d 896) (2007) (obstruction); *Lattimore v. State*, 282 Ga. App. 435, 436 (1) (638 SE2d 848) (2006) (possession of a firearm during the commission of a felony); *Johnson v. State*, 246 Ga. App. 109, 112 (3) (539 SE2d 605) (2000) (hijacking).

2. Belcher contends that his statement to police admitting he robbed the victim should have been suppressed because it was induced by the hope of benefit. The officer who conducted the interview testified that after Belcher was transported to the police department, he began to interview Belcher. Belcher then asked to have an attorney present. The officer ended the conversation with Belcher and began the process of transporting him "to the sheriff's office, at which time [Belcher] asked to speak to [the officer] again." Belcher began to give the officer information concerning the female friend when the following colloquy took place:

> Belcher: . . . [a]re you interested in me talking about what I just said?
> Officer: About drug dealers and stuff?
> Belcher: Yea. About helping you make some arrests.

> Officer: I'm interested . . . I'm honestly actually interested in anything you got to say to me, but I can't hear it till you sign this.
> Belcher: Okay. I will sign. . . .

The officer then read Belcher the *Miranda* warning and had Belcher sign the waiver form. Later in the interview, the officer told Belcher, "If you're gonna tell me anything about a drug dealer, you're gonna have to tell me what crime you committed. You gonna need my help?"

"We have construed the 'slightest hope of benefit' as meaning the hope of a lighter sentence." (Citation and punctuation omitted.) *Porter v. State*, 264 Ga. App. 526, 531 (3) (591 SE2d 436) (2003). Here, the officer made no promise of a lighter sentence, and his question asking if Belcher would need his help did not render Belcher's statement inadmissible. See id.; *Griffin v. State*, 257 Ga. App. 167, 168 (570 SE2d 611) (2002).

3. Belcher contends that the State exercised a peremptory strike against a potential juror in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

> In order to show a *Batson* violation, a defendant must prove that the State purposefully engaged in racial discrimination through its use of peremptory strikes. On appeal, great deference must be extended to a trial court's determination that no *Batson* violation has occurred. Following a defendant's showing of a prima facie case of racial discrimination, the reasons provided by the State to overcome any such presumption of racial discrimination must be concrete, tangible, race-neutral, and neutrally applied.

(Citations and punctuation omitted.) *Woolfolk v. State*, 282 Ga. 139, 141-142 (3) (644 SE2d 828) (2007).

Belcher complains that the State struck a potential juror for a racial reason. The State explained that it chose to strike the potential juror, an African-American woman, because she "had been evicted multiple times," and that she had been involved in "some domestic relations cases." These are both race-neutral reasons and Belcher did not demonstrate that they were a pretext for purposeful discrimination. See, e.g., *Chinn v. State*, 276 Ga. 387, 388-389 (2) (578 SE2d 856) (2003) (strike of juror who was victim of domestic violence was race-neutral); *Ware v. State*, 258 Ga. App. 706, 708 (2) (574 SE2d 898) (2002) (strike of juror because of his unstable employment was race-neutral). The trial court therefore did not err in denying

WESTLAW LIBRARY

Belcher's *Batson* challenge to the State's strike of this juror.
*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED FEBRUARY 3, 2010.

*Jennifer F. Arndt*, for appellant.
*W. Kendall Wynne, Jr., District Attorney*, for appellee.