307 Ga. 339
FINAL COPY

S19A0541.  LEILI v. THE STATE.

BENHAM, Justice.

Appellant Matthew Leili was convicted of malice murder and associated offenses arising out of the death of his wife, Dominique Leili.[1]  On appeal, Appellant claims that the trial court erred in denying his motion to suppress, that the State was erroneously permitted to adduce other acts testimony from his ex-wife, and that

---

[1] The crimes occurred in July 2011.  In May 2015, Appellant was indicted on the charges of malice murder, two counts of felony murder predicated on aggravated assault, two counts of aggravated assault, and three counts of unlawful eavesdropping and surveillance.  Following a trial conducted January 25 through February 5, 2016, a jury convicted Appellant of malice murder, one count of felony murder, one count of aggravated assault, and each count of unlawful eavesdropping and surveillance (intentionally recording private conversations of Dominique, her father, and her sister).  In February 2016, the trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder and three consecutive five-year terms of imprisonment for each count of unlawful eavesdropping and surveillance.  The remaining counts were vacated by operation of law or merged for sentencing purposes.
   On February 12, 2016, Appellant filed a motion for new trial, which he later amended in May 2017 and April 2018.  Following an April 2018 hearing, the trial court denied Appellant's motion as amended on August 31, 2018.  On September 21, 2018, Appellant filed a timely notice of appeal; this case was docketed to the April 2019 term of this Court and thereafter submitted for a decision on the briefs.

trial counsel was ineffective. Finding no reversible error, we affirm.

Reviewing the facts in a light most favorable to the verdicts, the evidence adduced at trial established as follows. Appellant and Dominique were married in the late 1990s. During the course of the marriage, Appellant was verbally abusive and exhibited controlling behavior, such as physically restraining Dominique by placing himself on top of her, locking her in the bathroom, recording her conversations, and using technology to track her location. Dominique confided in friends that Appellant was also physically abusive, at one point pinning her against a wall and putting his hands around her throat; co-workers testified that they observed injuries on Dominique, despite her apparent attempt to hide them with clothing. In the weeks before her death, Dominique announced to friends that she was ending her marriage but expressed concern about doing so because Appellant had threatened to kill her if she tried to leave with their children.

On the evening of July 8, 2011, the couple went to dinner and a movie but had a verbal altercation when they returned home in

2

the early morning hours of July 9; Appellant would later report to police that this argument resulted when Dominique did not reciprocate his desire for sex. According to Appellant, he left Dominique in an upstairs bedroom following the argument and retired to a first-floor office around 2:00 or 3:00 a.m. At approximately 6:00 a.m., Appellant awoke and went to find his wife but could not locate her, although all her possessions and her vehicle remained at the residence. According to Appellant's father, who was staying at the Leili residence at the time Dominique disappeared, Appellant left the residence for over an hour looking for his wife. Later that day, Appellant contacted one of his wife's co-workers and calmly inquired if Dominique was with her. The co-worker was surprised to hear from Appellant as she did not have a close personal relationship with Dominique.

On Monday, July 11, Dominique's father attempted to reach her by telephone, but Appellant answered the call. Upon discovering that his daughter was missing, Dominique's father contacted the police and filed a missing-person report because Appellant had not.

3

Friends and family attempted to coordinate a search effort, but Appellant proved to be a "roadblock," disapproving various photographs of Dominique and written content that was to be used on flyers. On Wednesday of that week, as friends and family searched for Dominique, Appellant filed for divorce. On Friday of that week, Appellant provided law enforcement with the victim's two cell phones, one of which had been damaged beyond use, repair, or analysis. The jury learned that, while his wife was missing, Appellant remarked to a family member that he would be blamed if Dominique were found drugged and murdered. The jury also learned that Appellant provided inconsistent timelines regarding the morning Dominique went missing and that Appellant had blamed Dominique's disappearance on a mental health crisis, though her medical history supported no such concern.

On Saturday, July 16, two members of a search party found Dominique's naked body hidden, face down, under a mound of loose dirt and vegetation at the front of the Leilis' neighborhood. Though an autopsy revealed no obvious cause of death, the medical examiner

4

testified that she found no evidence that Dominque died of a natural cause, disease, self-inflicted injury, or violent accident. The medical examiner found injuries consistent with strangulation, though the concealment and deterioration of the body frustrated a definitive finding, and concluded that Dominique's death was "highly suspicious of homicidal violence."

Just hours after Dominique was discovered, law enforcement executed a search warrant at the Leili residence. Officers seized computers and other electronic devices from the residence and searched vehicles on the property. The jury heard testimony that Appellant was known to have a keen interest in technology and that the Leili residence was fitted with numerous audio-recording devices and approximately 19 security cameras. However, a search of the computers and hard drives seized by law enforcement originally yielded little useful data. A search of Appellant's SUV revealed hair belonging to Dominique (or her children) in the hatchback locking mechanism and in the rear cargo area. The case went cold, and Appellant moved to Vermont.

5

A cold-case investigator revisited the case in July 2012 and secured additional search warrants to collect more data from the seized electronics. During this second forensic examination, investigators discovered audio recordings that captured various verbal altercations between the couple. In some of the recordings, Dominique is heard telling Appellant to "get off of [her]" or heard accusing him of putting his hands around her throat. Investigators also discovered that the security cameras had been manually disabled by password at 7:18 a.m. the morning Dominique disappeared and then re-engaged roughly two days later at 4:41 a.m. on July 11. Though the cameras apparently captured video between midnight and 6:57 a.m. on July 9, those recordings had been deleted and rendered irretrievable by a program run on July 11 and July 16. Finally, the jury learned that Appellant had surreptitiously recorded telephone conversations between Dominique and her father and between Dominique and her sister.

1. Though not raised by Appellant as error, in accordance with this Court's practice in appeals of murder cases, we have reviewed

6

the record and conclude that the evidence, as summarized above, was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant first argues that the trial court committed reversible error when it denied his motions to suppress items seized during searches of his residences in Georgia and Vermont. There was no error.

"[T]he Fourth Amendment provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" (Emphasis omitted.) *United States v. Travers*, 233 F3d 1327, 1329 (II) (11th Cir. 2000). In making a determination as to the existence of probable cause sufficient to issue a search warrant, the task of a magistrate is

> simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of

knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*DeYoung v. State*, 268 Ga. 780, 787 (493 SE2d 157) (1997). "[A] search conducted pursuant to a search warrant, regular and proper on its face, is presumed to be valid and the burden is on the person who moves to suppress the items found to show that the search warrant was invalid." (Citation and punctuation omitted.) *Hourin v. State*, 301 Ga. 835, 844 (3) (b) (804 SE2d 388) (2017).

"The duty of an appellate court reviewing a search warrant is to determine, based on the totality of the circumstances, whether the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant." *Glenn v. State*, 302 Ga. 276, 281 (III) (806 SE2d 564) (2017). "A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court," *DeYoung*, 268 Ga. at 787, and "[e]ven doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper," *Sullivan v. State*, 284 Ga. 358, 361 (2) (667 SE2d 32) (2008). We

8

address each warrant in turn.

(a) Search warrant 11X00734 was issued on July 16, 2011, by a Gwinnett County magistrate. The affidavit and application supporting the warrant reflect that the warrant was sought in connection with the offenses of murder and aggravated assault and premised on the following facts: Dominique went missing on July 9, 2011, without a wallet, identification, or a cellular telephone; the couple had fought immediately before Dominique's disappearance; Appellant did not report his wife missing for two days; Appellant owned a gun and had placed GPS tracking devices on various vehicles at the property; the home was equipped with surveillance cameras; law enforcement learned from Dominique's daughter of the history of domestic incidents between the couple; on June 28, 2011, just days before Dominique's disappearance, officers responded to a domestic dispute call at the residence, though no arrest was made; and, on July 16, 2011, the body of a woman matching Dominique's description was found in a wooded area "within walking distance" of the Leili residence with tire tracks nearby.

The warrant was granted and permitted the search and seizure of the following items:

(1) Weapons to include guns, knives, objects capable of causing blunt force injuries, [and] ligatures; (2) Tangible physical evidence to include, but not limited to, blood, fibers, hairs, fingerprints, [and] DNA; (3) Surveillance Video; (4) Letters or correspondence, electronic or written; (5) All computer hardware and software containing records or needed to retrieve records authorized to be seized under paragraphs [three] (3) through four (4) above; all electronic devices which are capable of analyzing, creating, displaying, converting, transmitting or storing electronic or computer impulses or data. These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives and other computer-related devices. Computer or data processing software, or other media devices capable of being read by a computer, word processor, or other computer-related equipment, and data stored thereon. These items include floppy diskettes, fixed hard drives, removable hard disk cartridges, tapes, laser disks, video cassettes, and other media capable of storing electronic or magnetic coding. Documents or devices reflecting passwords. Instruction manuals and materials concerning the operation of computer. Hardware and software to be seized, as described above; (6) Vehicle tire and tread measurement, print and information; (7) GPS tracker devices capable of being installed on a vehicle.

Appellant first argues, as he did below, that there was

insufficient probable cause for the issuance of the warrant. However, "[a] warrant to search a murder suspect's home . . . need not prove that the suspect was in fact the killer[,] only . . . that 'there is a *fair probability* that contraband or evidence of a crime will be found in a particular place.'" (Citations omitted; emphasis supplied.) *Glenn*, 302 Ga. at 281-282. The "fair probability" standard is met here. The warrant application plainly sets out the concerning circumstances surrounding Dominique's disappearance, Appellant's delay in reporting her missing, the history of domestic incidents between the couple, the couple's recent fight, and the discovery of a woman's body in a wooded area close to the Leili residence matching Dominique's description. The warrant application also details that the house was equipped with surveillance equipment, that the cars were equipped with GPS devices, and that Appellant owned at least one firearm.[2] Based on the totality of the circumstances, the magistrate was authorized to conclude that probable cause existed

___

[2] At the time the warrant was procured, law enforcement did not know the exact manner in which Dominique had died and, as such, included reference to Appellant's firearm.

11

for the issuance of the search warrant. See *Glenn v. State*, 288 Ga. 462 (1) (b) (704 SE2d 794) (2010).

Appellant also contends that, even if there were probable cause, the warrant was needlessly broad and that there was insufficient cause to justify the seizure of all of Appellant's electronics.[3] However,

> [i]t is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit.

*United States v. Wuagneux*, 683 F2d 1343, 1349 (1) (B) (11th Cir. 1982). At the time the warrant was sought and executed, investigators knew only that a possible murder had occurred in close proximity to the Leili residence; that the couple had fought immediately prior to Dominique's disappearance; that the couple had a history of domestic discord; that Appellant had failed to report

---

[3] Appellant also asserts that the warrant was overbroad inasmuch as it permitted the limitless search and seizure of "letters and correspondence," but this claim would fail for the same reason as his argument above. See *Reaves v. State*, 284 Ga. 181, 188 (2) (d) (664 SE2d 211) (2008).

12

his wife missing; and that certain surveillance equipment (both cameras and GPS-tracking devices) could hold evidence related to the crime. The magistrate was authorized to make the "practical, common-sense" determination that the surveillance cameras and GPS-tracking equipment may have captured evidence of the relevant crimes and that any such evidence would have been stored on electronic devices, though officers could not articulate exactly where those files would be found. Further, though the warrant permitted the seizure of all electronic equipment, when read as a whole, "[t]he warrant[ ] here must be understood as limiting the search to items (in addition to the items specifically mentioned in the warrant) reasonably appearing to be connected to the specific crimes delineated in the warrant[ ]." (Citations and punctuation omitted.) *Reaves v. State*, 284 Ga. 181, 186 (664 SE2d 211) (2008). Accordingly, the trial court correctly denied Appellant's motion to suppress with respect to this warrant.

(b) Search warrant 15D101386 pertains to the search of a residence in Vermont where Appellant lived in the years after

13

Dominique's death but before he was arrested; the warrant was issued by a magistrate in Windham County, Vermont, two months after Appellant was arrested for Dominique's murder. In the affidavits supporting the application for a search warrant, investigators explain that Appellant's daughter testified at Appellant's bond hearing that she had access to certain computers and electronics belonging to her father and that those electronics contained, among other things, a clip of surveillance video pertaining to a domestic incident occurring just weeks before the murder, which had prompted Dominique to contact law enforcement for help. The affidavit explains that investigators had been unable to recover surveillance video from around the time of the murder — because it had been deleted and rendered unrecoverable — and, further, that law enforcement was not previously aware of the existence of the video clip referenced by Appellant's daughter. The affidavits also detail jailhouse telephone calls from Appellant to his daughter in which he asks her to hide certain computers and electronic devices or to copy or delete data from various devices. The

14

warrant was issued, and it authorized the search of the Vermont residence and the seizure of "any data storage devices to include but not limited to cell phones, computers, USB storage devices, zip drives, binders, and external hard drives." Law enforcement seized numerous computer and electronic devices, as well as cellular telephones.

Appellant argues on appeal, as he did below, that the warrant lacked probable cause and was needlessly broad. Again, however, the "fair probability" test is met here. The affidavits supporting the warrants plainly set out the real possibility that Appellant had saved or hidden electronic devices containing digital data relevant to the murder of Dominique (that had been previously unavailable to law enforcement) and that Appellant was using his daughter to manage those devices. With respect to breadth, the warrant specifically identifies the items to be seized from the Vermont residence, namely various electronic devices. See *United States v. Blum*, 753 F2d 999, 1001 (III) (1) (a) (11th Cir. 1985) ("[A] description is valid if it is as specific as the circumstances and the

15

nature of the activity under investigation permit."). Accordingly, the trial court did not err when it denied Appellant's motion to suppress items seized from the Vermont residence.

3. Turning to the next claim, Appellant's ex-wife, Joanne Lucey, was permitted to testify pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)") concerning Appellant's behavior during the course of their marriage. Lucey testified that, though Appellant did not strike her, he would restrain her by "pinning" her down or against a wall, that he would scare her by hitting the wall or an object nearby, and that he electronically tracked her with a pager. She also testified that he manipulated her in ways that impacted how she moved through life; according to Lucey, Appellant would suggest meeting at a specific time or location but would not show up, would deny the plans were made, and would question her about her whereabouts. When Lucey separated from Appellant, he showed up inside her parents' house (using keys he had made for himself) looking for her, and she eventually had to seek a protective order. Appellant argues on appeal, as he did below, that her testimony was

16

inadmissible.

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Rule 404 (b). This Court has adopted a three-part test to evaluate the admissibility of other acts evidence proffered under this rule. See *Bradshaw v. State*, 296 Ga. 650 (3) (769 SE2d 892) (2015). This test provides as follows:

> (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

(Citation and punctuation omitted.) Id. at 656. See also *State v. Jones*, 297 Ga. 156 (1) (773 SE2d 170) (2015). Here, the trial court concluded that Lucey's testimony was relevant to motive, intent, and knowledge; that the evidence was not substantially outweighed by undue prejudice; and that there was sufficient proof for the jury to conclude that Appellant committed the extrinsic acts. We review a

17

trial court's decision regarding this evidence for clear abuse of discretion, see *Bradshaw*, 296 Ga. at 656, and such a decision is subject to harmless error analysis, see *Taylor v. State*, 306 Ga. 277 (2) (830 SE2d 90) (2019).

Even assuming, as Appellant suggests, that the trial court abused its discretion in permitting Lucey to testify pursuant to Rule 404 (b), "it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Taylor*, 306 Ga. at 283. The crux of Lucey's testimony concerned Appellant restraining her, punching or breaking things in her vicinity to scare her, engaging in surveillance and tracking, manipulating her, and then, when they separated, showing up in her parents' house uninvited. However, there was already extensive evidence concerning similar behavior with respect to Dominique, as well as the volatility of his marriage to Dominique. The jury learned that Appellant used audio and video surveillance, tracked Dominique with GPS devices, physically restrained her in various ways, isolated her from her family, controlled her, and would show up at various locations ostensibly to

18

"check up" on her. Further, Lucey acknowledged in her testimony that, though she procured a protection order, Appellant did not resist the divorce and, in fact, did not show up for the proceedings; she had no further contact or issues with him after the divorce. Finally, it would have been obvious to the jury that Lucey seemed to have a clear bias against Appellant; she testified that, if given a chance, she would run him over with her car. Because Lucey's testimony concerning Appellant's conduct was similar to a great deal of other testimony and because of her obvious bias against Appellant, it is highly probable that her testimony did not contribute to the verdict in this case.

4. Finally, Appellant claims that trial counsel rendered constitutionally ineffective assistance when he failed to challenge other warrants issued and executed throughout the investigation into Dominique's murder. He is not entitled to relief on these claims.

To succeed on his claims, Appellant must show both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance. *Strickland*

19

*v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, Appellant must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013).

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U. S. 365, 375 (II) (A) (106 SCt 2574, 91 LE2d 305) (1986).

The record reflects that law enforcement sought and obtained approximately twelve search warrants during the course of their investigation of Dominique's murder: one warrant authorized the search of the Leili residence in Georgia, one warrant authorized the search of the Vermont residence, and the remaining ten authorized searches of electronic devices seized during those two searches.

20

Trial counsel challenged only the warrants authorizing the search of the Georgia and Vermont residences (discussed in Division 2, supra), and Appellant claimed in his motion for new trial that counsel was ineffective for failing to challenge the remaining ten warrants.

At the motion for new trial hearing, trial counsel testified that he made the strategic decision to challenge only the warrants related to the residences because all other warrants flowed from those original searches. In its order denying Appellant's motion for new trial, the trial court found that trial counsel is an experienced attorney — having decades of criminal law experience and having tried hundreds of criminal cases, both as a prosecutor and as a defense attorney — and the trial court concluded, crediting trial counsel's testimony, that counsel's decision with respect to the search warrants was reasonable strategy. Appellant argues on appeal, however, that it was unreasonable for trial counsel to have failed to challenge the remaining search warrants because they were nothing more than "general warrants." Appellant's claims are

21

meritless.

"By definition, a general warrant is one which does not sufficiently specify the place or the person to be searched." (Citation and punctuation omitted.) *State v. Cochran*, 135 Ga. App. 47, 48 (1) (217 SE2d 181) (1975). The affidavits and applications for warrants 11X00737, IIX00750, and IIX00751, pertain to a computer processing unit ("CPU"), a digital video recorder, and a second CPU, respectively, that had been seized from Appellant's Georgia residence. Each affidavit and application specifically describes the item to be searched, identifies that the item is being stored by law enforcement, plainly connects the item to law enforcement's investigation, and also describes the evidence sought on the device.[4]

---

[4] For example, warrant 11X00737 pertains to a "silver custom built computer in 'cosmos' case" seized by law enforcement pursuant to the search of the Leili residence. The affidavit and application explain that the computer "was connected to the surveillance system that was present in the residence [and] could contain information of evidentiary value as to . . . the victim leaving or other persons coming to and leaving the residence." While the affidavits reflect that law enforcement intended to make a "bit for bit image of the original media collected" from the computer and "examine all data stored upon and associated" with the device, this does not, as Appellant contends, permit an unlawful "rummaging" through his digital records. The authorized search of the computer is squarely limited to the ongoing murder investigation and

22

Each warrant specifically identifies the electronic device to be searched and reflects that the search was limited to evidence pertaining to the commission of felony murder.

Warrants 11X00752, 14X01311, and 14X01410 each pertain to the same CPU seized during the search of the Leili residence in Georgia. The original affidavit and application explain that the Leili residence was fitted with an extensive surveillance system and that there was reason to believe that the CPU "could contain information of evidentiary value . . . including the victim leaving or other persons com[ing] to and leaving the residence." The first of the two follow-up warrants was procured because the original copy of the material from the seized computer was apparently made "unavailable," and the second follow-up warrant was procured because officers sought to review and recover more than just possible video-surveillance files. Each warrant was supported by a detailed application and a lengthy affidavit discussing the murder and the device's connection

search for surveillance video, and Appellant fails to explain how law enforcement may effect a proper and meaningful search of the device without examining all the data thereon.

to the investigation, and, again, each warrant specifically identifies the device to be searched and limits the scope of the search to evidence pertaining to the commission of felony murder.

Warrants S15X01131 and S15X01320 pertain to items recovered from the Vermont residence. These warrants, like the other warrants, were supported by detailed applications and affidavits; the application and affidavits include, among other facts, information learned from the daughter at the bond hearing and information gleaned from Appellant's jailhouse telephone conversations. The warrants identify the electronics to be searched and limit the search to evidence pertaining to the crime of murder.[5]

As trial counsel correctly explained in his testimony below, the unchallenged warrants all flowed from the Georgia and Vermont searches and involved only the search of seized electronics for data.

---

[5] Appellant also contends that trial counsel should have challenged warrants 12X00286 and 12X00287, which pertain to the search of digital voice recorders. However, as Appellant acknowledges in his brief, nothing of evidentiary value was recovered from these devices; accordingly, even if trial counsel should have challenged the warrants, Appellant cannot demonstrate any prejudice from that alleged deficient performance. See *Kimmelman,* 477 U. S. at 375.

Trial counsel fairly reasoned that, if he could successfully suppress the items seized in the first two searches, the subsequent warrants and searches would have been rendered invalid. See *Duncan v. State*, 259 Ga. 278, 282 (2) (379 SE2d 507) (1989) (discussing "fruit of the poisonous tree" doctrine). Appellant has not shown that the ten warrants at issue are so troubling that no reasonable attorney would have decided to challenge only the two main warrants in an effort to invalidate the fruits of all the searches in the investigation.[6]

---

[6] Appellant complains that the remaining search warrants lack particularity because they authorize the search of the electronic devices for "tangible evidence of the commission of the crime of felony murder" without including a more specific list of items and without narrowing the scope of the search; thus, says Appellant, trial counsel was ineffective for failing to challenge the warrants. However, "the warrants did not authorize the executing officers to conduct a search for evidence of other crimes but only to search for and seize evidence relevant to the crime identified in the warrant," *Reaves v. State*, 284 Ga. 181, 186 (664 SE2d 211) (2008) (citation and punctuation omitted), and it was reasonable for trial counsel to conclude that the warrants were sound. See *Lance v. State*, 275 Ga. 11, 21 (19) (a) (560 SE2d 663) (2002) (affirming warrant authorizing search for "any other fruits of the crime of murder" (punctuation omitted)); *Carson v. State*, 314 Ga. App. 515, 517 (1) (c) (724 SE2d 821) (2012) (warrant not invalid where it sought, inter alia, "any and all evidence related to the [victim's] murder" (punctuation omitted)). Compare *United States v. George*, 975 F2d 72, 75-77 (I) (A) (2d Cir. 1992) ("(A)uthorization to search for 'evidence of a crime,' that is to say, any crime, is so broad as to constitute a general warrant."); *Wilson v. State*, 136 Ga. App. 70, 70 (221 SE2d 62) (1975) (search warrant permitting the search of "all persons on the premises" at a certain address invalid as general warrant).

Compare *Green v. Nelson*, 595 F3d 1245, 1251 (11th Cir. 2010) ("[T]rial counsel's failure to file a motion to suppress was not the result of a strategic decision-making process but rather of inaction resulting from an admittedly mistaken view of the evidence in the case."); *Bryant v. State*, 301 Ga. 617, 618-620 (2) (800 SE2d 537) (2017) (trial counsel ineffective for failing to challenge warrant that failed to describe items to be seized *at all*). That trial counsel *could* have challenged the other remaining warrants or that trial counsel's strategy proved unsuccessful does not render his performance constitutionally deficient. See *Davis v. State*, 290 Ga. 584, 587 (2) (b) (723 SE2d 431) (2012) ("In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result." (citation and punctuation omitted)). Accordingly, the trial court correctly denied relief to Appellant on this claim.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2019 – RECONSIDERATION DENIED NOVEMBER 14, 2019.

Murder. Gwinnett Superior Court. Before Judge Rich.

*Lynn M. Kleinrock*, for appellant.

*Daniel J. Porter, District Attorney, Samuel R. d'Entremont, Lee F. Tittsworth, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.