**THIRD DIVISION**
**DOYLE, P. J.,**
**RICKMAN AND GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 4, 2023**

# In the Court of Appeals of Georgia

A23A0939, A23A0940. THE STATE v. BLACK; and vice versa.

DOYLE, Presiding Judge.

After the State indicted Kody Black with one count of rape, Black filed a series of motions to suppress evidence obtained from his cell phone pursuant to a search warrant. The trial court granted the motion in part, and in Case No. A23A0939, the State appeals that order, contending that the trial court erred by ruling that the warrant application failed to establish probable cause to search Black's cell phone for information outside of his communications with the alleged victim. In Case No. A23A0940, Black appeals the same order, contending that the trial court erred by failing to grant his motion to suppress in its entirety because (1) the State was not authorized to initially seize his cell phone; (2) the warrant application failed to authorize any search of his phone; and (3) there was an unreasonable delay between

the seizure of his phone and the issuance of the warrant. For the reasons that follow, we affirm in part and reverse in part in Case No. A23A0939, and we affirm in Case No. A23A040.

In reviewing a trial court's ruling on a defendant's motion to suppress evidence, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous; we will not disturb the trial court's findings based on conflicting evidence if there is any evidence to support them. The trial court's legal conclusions are reviewed de novo, however.[1]

So viewed, the record shows that police were called due to an allegation of rape by B. G. She explained that she met Black on the Tinder dating app, and they exchanged phone numbers. Sometime in early August 2021, they began communicating on Snapchat as well as text messaging.

Late in the evening on or about August 15, 2021, B. G. was at a party with friends and had been drinking alcohol. Black came to the party separately and socialized with B. G. and others. At some point, B. G., who was heavily intoxicated, asked Black to take her home; rather than take her to her residence, Black took her

---

[1] (Citations and punctuation omitted.) *Nelson v. State*, 312 Ga. 375, 377 (863 SE2d 61) (2021).

to his own. B. G. was too incapacitated to recognize her surroundings, but she found a bed and went to sleep.

At approximately 3:00 a.m., B. G. awoke and realized that her vagina was sore, she was naked, and she could not recall the night's events. She put on her clothes and went outside to call a friend for a ride home, but Black came outside to check on B. G., who "played it off as if nothing was wrong," and went back to bed with Black. She later woke up at approximately 1:00 p.m. and went to an IHOP restaurant with a friend.

While they were at the restaurant, B. G. received text and Snapchat messages from Black discussing the night. He explained that he had a security camera in his bedroom to watch his dog, but he had deleted certain footage because B. G. was undressed. B. G. told Black she was sore, and Black tried to call her several times and messaged her. Black was adamant that he "didn't do anything," and he said that B. G. used a sex toy on herself. B. G. later reported her experience to police.

The next day, police spoke to Black, who voluntarily came to the police department to give his version of the events. During that interview, Black explained to an investigator that he and B. G. had been "Facebook dating," and he went to the party after recognizing B. G.'s surroundings in a Snapchat photo and messaging her.

3

According to Black, when he arrived, B. G. was intoxicated and lying face-down on the kitchen floor. B. G. asked Black for a ride to a friend's house, but she changed her mind and asked Black to take her to his house. Black said B. G. was "annoying," but he socialized with her and played a farming simulator game until approximately 5:45 a.m. During the interview, Black periodically showed the investigator videos from his security camera and messages on his phone to corroborate his story, and he denied having intercourse with B. G. As the interview progressed, Black eventually gave conflicting versions of having sexual contact with B. G., ultimately stating that he briefly had intercourse with B. G. but stopped because "it didn't feel right."

After Black stated that he had had intercourse with B. G., the investigator left the room to get a *Miranda*[2] waiver form, and while he was left alone, Black used his phone to type messages. Throughout the interview, Black had possession of his phone and was periodically referencing and displaying various forms of information on it to explain his story to the police investigator. Shortly after Black admitted to having intercourse with B. G., police informed Black that they were going to seize his phone to preserve it while they obtained a warrant to search it. The interview ended when Black was placed under arrest.

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Based on the interviews with B. G. and Black, police prepared the first of two applications for a search warrant — this one to search all of the data on Black's phone — and a magistrate issued that warrant on August 18, 2021 ("the First Warrant"), two days after Black's arrest and the seizure of his phone. On November 18, 2021, Black moved to suppress any evidence taken from his phone pursuant to the First Warrant on the ground that the warrant was overly broad and lacked a nexus between the phone and the alleged criminal conduct. On December 6, 2021, police obtained a second warrant to search Black's phone ("the Second Warrant"), which sought to search all data on Black's phone from August 10 to August 18, 2021, i.e., the time frame pertinent to Black's interactions with B. G.[3]

Black moved to suppress the evidence obtained pursuant to the Second Warrant in August 2022, arguing that it violated his Fourth Amendment rights because it was the fruit of an earlier unauthorized search, that it lacked a nexus between the phone data and the crime of rape, and that the four-month delay in issuing the Second Warrant was unreasonable. Following a November evidentiary hearing that included

---

[3] Although not specifically challenged here, police apparently performed a separate extraction of that data from Black's phone pursuant to the Second Warrant.

testimony from the interviewing investigator as well as playing a video recording of Black's interview, the trial court ruled from the bench as follows:

> I will suppress anything that's not relevant to communications between Mr. Black and [B. G.]. You can have [the latter].
>
> And I will allow anything you find that records the bedroom on the night in question and the next day in question. I think that is very relevant because it may be exculpatory. It may not be. Okay? You can get that information.
>
> And I'll find that the search — you can have a search based on that, but I'll suppress everything else.
>
> What he texted his roommate or his mom during this interview, he was not in custody. You can't get ahold of that. That's . . . I'm not going to allow that.

When the State asked for clarification, asserting that the suppression hearing was focused on Fourth Amendment violations instead of evidentiary concerns such as relevance or hearsay, the trial court clarified that the phone contents could be used to impeach witnesses who testify at trial, including communications beyond Black and B. G.

The following month, the trial court entered a written order on Black's motion to suppress, stating:

> The [Second Warrant] failed to provide probable cause to search Black's entire cell phone. The search warrant affidavit sought seizure of all contents on the phone, but the Court found that there was only probable cause to seize the communications between the accuser and Black. Therefore, the government is limited to only using those communications between the accuser and Black[,] and all other evidence is suppressed.

The trial court also ruled that the First Warrant failed as a whole to establish probable cause to search Black's phone.

Each party now appeals from that order in these companion cases.

*Case No. A23A0939*

1. *Scope of the items to be searched under the Second Warrant.* The State contends that the trial court erred in its written order[4] by ruling that police lacked

---

[4] The trial court's written order, as opposed to its oral pronouncements during the suppression hearing, controls the proceedings in this case. See *State v. Perry*, 349 Ga. App. 475, 477, n.2 (825 SE2d 902) (2019) ("'A trial court's oral pronouncement is not a judgment until it is put in writing and entered as the judgment.'"). Further, although the warrant states that the magistrate received oral testimony, we have confined our review to the information found within the four corners of the application of the Second Warrant. See *Wingate v. State*, 347 Ga. App. 341, 343 (2) (819 SE2d 502) (2018).

probable cause to search Black's phone for anything other than communications between Black and B. G. We agree.

In Georgia, a search warrant shall only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed. OCGA § 17-5-21 (a). The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The trial court then examines the issue as a first level of review, guided by the Fourth Amendment and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause.

We then review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis. The duty of the appellate courts is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrant. In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

8

When considering whether the magistrate had a substantial basis to find probable cause, we look at the circumstances as they existed when the search warrant was issued, and [whether] the defendant[ will be] ultimately found to have been engaging in criminal activity is . . . of no consequence for purposes of our analysis, which is grounded in the safeguards afforded by the Fourth Amendment.[5]

Here, the State has accused Black of raping B. G. in his bedroom while she was too intoxicated to consent. The warrant application presented to the issuing magistrate outlined the following facts pertinent to the State's indictment: Black and B. G. first met virtually, and Black communicated with B. G. about the events in question in a variety of ways using a variety of applications on his phone; Black also communicated with others about the relevant events, including with his mother and with his roommate during and after the relevant events; Black recorded video of activities in his bedroom during the relevant evening, and he told B. G. and police that he had deleted videos of her while she was undressed; and Black used photos and videos saved on his phone during the police interview to corroborate his story to

---

[5] (Citations and punctuation omitted.) *State v. Cartee*, 355 Ga. App. 326, 329-330 (844 SE2d 202) (2020).

police, even acknowledging that some are stored on remote servers accessible through his phone.

The legal standard for issuing the warrant is not a hyper-technical one,[6] and the totality of the circumstances demonstrated a fair probability that Black's phone would have a wide variety of types of evidence relevant to proving the rape alleged in the indictment.[7] For example, as the trial court recognized, Black's communications with B. G. would shed light on his state of mind during the night as well as B. G.'s condition and consent or lack thereof. But beyond that, videos and photos of Black's bedroom, including any that are deleted and recovered through a forensic search of Black's phone, would also reveal evidence of B. G.'s and Black's conduct that night. Further, Black specifically referenced his own social media use as well as communications about the evening between Black and others besides B. G., including his roommate who was present during the evening. But the trial court's written order

---

[6] See *Taylor v. State*, 303 Ga. 57, 61 (2) (810 SE2d 113) (2018) ("in making the probable cause determination, a magistrate may draw 'reasonable inferences . . . from the material supplied to him by applicants for a warrant").

[7] See *Copeland v. State*, 314 Ga. 44, 49 (3) (875 SE2d 636) (2022) (reviewing courts owe "substantial deference" to the common-sense exercise undertaken by a magistrate making a probable cause determination).

suppressed this potentially relevant evidence that the warrant application explicitly identified and connected to the alleged offense.[8]

The warrant application's descriptions of the various ways in which Black used his phone during the relevant events and police interview supported the magistrate's determination that probable cause existed to search Black's cell phone for a broad range of various types of data beginning on the day Black and B. G. first began communicating and ending seven days later when Black spoke to police.[9] Anything outside of that time frame would not be searchable. Accordingly, the trial court erred by suppressing all data except for communications between Black and B. G.

2. *Black's particularity argument*. In his response brief, Black makes the argument that suppression of his phone data was correct[10] because the data sought in

---

[8] See id. ("The probable cause test requires only a fair probability — less than a certainty but more than a mere suspicion of possibility — which by no means is to be equated with proof by even so much as a preponderance of the evidence.") (punctuation omitted).

[9] See *Alvarez-Maldonado v. State*, 359 Ga. App. 500, 509 (2) (859 SE2d 481) (2021). See also *Brannon v. State*, 298 Ga. 601, 612 (7) (783 SE2d 642) (2016) ("In describing the items to be seized pursuant to a search warrant, the degree of specificity required is flexible and will vary with the circumstances involved.") (citation and punctuation omitted).

[10] Black made the overbreadth argument in his motion to suppress below, and he invokes this Court's "right for any reason" doctrine. See generally *State v. Austin*,

11

the Second Warrant application was not sufficiently particular, citing *State v. Wilson*.[11] To the extent that the trial court implicitly disagreed by not suppressing *all* data sought under the Second Warrant, we affirm that aspect of the trial court's order.

The Fourth Amendment to the United States Constitution requires that a search warrant particularly describe the article or articles sought. In addition to requiring that officers have enough guidance to locate and seize only those items the warrant authorizes them to seize, this particularity requirement also prevents general searches — that general, exploratory rummaging in a person's belongings by the government that has been rejected since the founding as a violation of fundamental rights. *The particularity requirement is applied with a practical margin of flexibility, depending on the type of property to be seized, and a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit.*[12]

---

310 Ga. App. 814, 817 (1) n.10 (714 SE2d 671) (2011) (applying the "right for any reason" doctrine in the context of a motion to suppress) (physical precedent only), citing *English v. State*, 288 Ga. App. 436, 442 (3) (654 SE2d 150) (2007) ("Although the trial court gave other reasons for denying the motion to suppress, a judgment right for any reason will be affirmed.").

[11] 315 Ga. 613 (884 SE2d 298) (2023).

[12] (Citations and punctuation omitted; emphasis supplied.) Id. at 614. We note that as the warrant exists in the appellate record, the warrant appears to be attached to the supporting affidavit, and they share the same date within one minute of the same timestamp. The warrant does not expressly incorporate the affidavit, but it does reference it and rely on it. The warrant provides that a copy of it will be left with the person to be searched. In light of the circumstances of this case, we do not address the

12

Based on these principles, in *Wilson*, the Supreme Court of Georgia addressed a scenario where a magistrate issued a warrant to make an unrestricted forensic search of a cell phone belonging to the defendant, based on the following facts:

> On January 28, 2021, Bradly Jordan was shot and killed while performing pest control services at an apartment complex. After conducting an investigation at the crime scene, officers determined that the shooter was a "black male" driving a teal green "[1990]s model Ford Aerostar van" with a missing hubcap. Utilizing a license plate tracking system, officers located a van matching this description a few miles from the incident location. Wilson was listed as the registered owner of the vehicle. Officers conducted a traffic stop on the Ford Aerostar and spoke with Wilson, who was in the driver's seat. After answering some questions, Wilson was arrested and officers impounded his vehicle, which was later searched pursuant to a warrant. During that search, officers located, among other things, two cell phones, both of which belonged to Wilson.[13]

---

import of these facts, and we rely only on the face of the warrant in our particularity analysis. See generally *Pass v. State*, 309 Ga. App. 440, 443 (2) (710 SE2d 641) (2011) ("[W]here a search warrant fails to meet the particularity requirement on its face but instead incorporates a supporting document by reference, failure to leave a copy of that supporting document at the searched premises invalidates the warrant.") (punctuation omitted), quoting *Battle v. State*, 275 Ga. App. 301, 303 (620 SE2d 506) (2005).

[13] *Wilson*, 315 Ga. at 613.

As recounted by the Supreme Court, there was no particularity in the information sought nor in its connection to a crime.[14] The warrant authorized police "to obtain any and all stored electronic information," and it failed to connect those items to any criminal offense.[15] It sought, in essence, to rummage through the entirety of the data on Wilson's cell phone, hoping to find something that might implicate him in criminal conduct, without identifying an offense or how the data might be relevant.[16] The Supreme Court held that this was a fatally overbroad warrant that authorized a general search in violation of the Fourth Amendment's particularity requirement.[17]

Here, the Second Warrant is not so flawed. It used the following language:

There is now located [on Black's cell phone] certain instruments . . . or things, to wit:

---

[14] See id. at 614-616.

[15] The warrant in *Wilson* purported to limit the search to evidence connected to a crime, but it only listed OCGA § 17-5-21, a procedural statute describing the process by which police obtain warrants. See id. at 614 n.3.

[16] See id. at 623 ("As far as I can tell, [the] warrant allowed the search and seizure of the data from two cell phones on the theory that (1) they were found in the suspect's van, and (2) criminals commonly use cell phones to talk about crimes."), Pinson, J., concurring.

[17] See id. at 616.

Any and all files from August 10, 2021 to August 18, 2021, to include but not limited to: digital files, documents, photos, text messages (SMS) (MMS), audio files, contact lists, email messages, calendar information, video files, navigation files, chats, notes, instant messages, bookmarks, internet activity logs, call history logs, internet history logs, deleted information, digital pictures, and application data stored on the phone and in cloud accounts accessible from the device; regardless of format stored, and any and all files from social media applications which may save data, image files, or messages to the phone itself, or in cloud accounts accessible from the device; regardless of the format stored[] [w]hich is evidence that a crime has been or is being committed, to wit[,] 16-6-1 (a) (1) Rape.

Thus, on its face, the Second Warrant was restricted to data from the week-long period during which Black and B. G. began their relationship and which culminated in the alleged rape, and the Second Warrant limited the search to data "[w]hich is evidence that a crime has been . . . committed, to wit: 16-6-1 (a) (1) Rape."[18] The circumstances and nature of the activities under investigation justified this time-limited, if broad, search of Black's cell phone, such that a more particular listing of

---

[18] See, e.g., *Rickman v. State*, 309 Ga. 38, 42 (2) (842 SE2d 289) (2020) ("[W]arrants, read as a whole, limited the search of the contents of [the defendant's] cell phones to items reasonably appearing to be connected to [the victim's] murder"). *Westbrook v. State*, 308 Ga. 92, 98 (3) (a) (839 SE2d 620) (2020) ("[T]he use of the phrase 'electronic data' was specific enough to enable a prudent officer to know to look for photographs and videos stored on [the defendant's] cell phone.").

data was not constitutionally required.[19] For example, Black essentially told police that his cell phone contained various types of data relevant to the alleged rape when he used his cell phone to show police photos, videos, and messages to exculpate himself, and he volunteered that he had deleted some data because it showed B. G., the alleged rape victim, at least partially nude in his bedroom. His statement to police further demonstrated that his cell phone likely would have other relevant data from that week-long period, including, at a minimum: voice call data, text messaging, communication with multiple people on multiple applications, photos and videos recorded and saved to Black's phone, and activity on social media and dating apps that both Black and B. G. used. Given that a broad range data on Black's phone was known to be relevant to the alleged rape (including deleted data), and given that the warrant restricted the search to the relevant time frame, a generalized search for such

---

[19] See *Leili v. State*, 307 Ga. 339, 344 (2) (a) (834 SE2d 847) (2019) ("[T]hough the warrant permitted the seizure of all electronic equipment, when read as a whole, the warrant here must be understood as limiting the search to items (in addition to the items specifically mentioned in the warrant) reasonably appearing to be connected to the specific crimes delineated in the warrant.") (punctuation omitted). See also *Westbrook*, 308 Ga. at 97-98 (3) (a); *Rickman*, 309 Ga. at 42 (2).

data was within the practical margin of flexibility inherent in the particularity requirement.[20]

The Fourth Amendment's particularity requirement means that the warrant must be "sufficient to enable a prudent officer executing the warrant to locate [the items] definitely and with reasonable certainty. Moreover, the degree of the description's specificity is flexible and will vary with the circumstances involved."[21] The circumstances of this case demonstrate the relevance of a wide array of data on Black's cell phone, and "[r]ead in a common-sense fashion and in the context of the . . . list of items and the residual clause, [the Second Warrant] limiting [items] to be seized to [data] relevant to [the offense of rape] . . . [had] sufficient specificity, satisfying the particularity requirement of the Fourth Amendment."[22]

---

[20] See *Leili*, 307 Ga. at 343-344 (2) (a) (discussing what police knew as part of the context for applying the particularity requirement). See also *Palmer*, 310 Ga. 668, 675 (2) (c) (853 SE2d 650) (2021) (holding that the particularity requirement was met because the "search warrant listed classes of items that, as a practical matter, were likely to be found relevant to the [alleged crime,]. . . [and] the warrant limited the classes of items to those relevant to the [alleged crime].").

[21] *Westbrook*, 308 Ga. at 98 (3) (a).

[22] (Punctuation omitted.) *Palmer*, 310 Ga. 668, 675 (2) (c).

In sum, police knew what they were searching for, why it was connected to the alleged offense, and what time period in which to look. And, as discussed in Division 1, the magistrate properly found probable cause to connect the data on Black's phone to the crime. This was not, as in *Wilson*, a request to rummage through Black's phone hoping to find inculpatory data that may or may not exist; instead, it was looking for the digital artifacts of the events as already described to police by Black and B. G., during the relevant time period, and which would be evidence of rape.[23] Given this, and in light of the limited time frame and the connection to the alleged crime, the Second Warrant was not constitutionally deficient.[24]

---

[23] See *Reyes-Castro v. State*, 352 Ga. App. 48, 60-61 (1) (b) (833 SE2d 735) (2019) ("[G]iven the warrant's reference to the specific crime at issue and to the specific dates on which the crime was allegedly committed, as shown in the affidavit, . . . the warrant was sufficiently particular to notify the detective, the analyst, and/or any other executing officer of what evidence he or she was authorized to obtain from [the defendant's] phone and to prevent a general exploratory search of the other downloaded content for evidence of unrelated crimes or other unauthorized purposes.").

[24] We note the concerns raised in the special concurrence in *Wilson*, i.e. that a residual clause limiting a search to evidence of a specific crime is potentially more problematic than a "catch-all" residual clause that arguably expands an already limited list. See *Wilson*, 315 Ga. at 620 ("Our 'residual clause' cases, in short, have started to suggest a different proposition than the principle upon which they are based, and applied it to a broader spectrum of language than the principle covers.") (Peterson, J., concurring). But the circumstances of this case remove it from the class of cases critiqued in the *Wilson* concurrence because Black's cell phone was known

18

In this case, Black cross-appeals and asserts that the trial court should have suppressed everything on his cell phone because (a) the initial seizure of his cell phone was unauthorized, and (b) there was an undue delay between the seizure of his phone and the issuance of the Second Warrant.[25] We disagree.

3. *Seizure of Black's cell phone.* Black contends that the initial seizure of his phone was unauthorized because he had not been arrested at the time police seized his phone, and police did not have a warrant.

The seizure occurred during the police interview Black voluntarily engaged in. Throughout the interview, Black occasionally used his phone to show police photos, videos, and other information in an effort to provide a time line of the evening and corroborate his version of events. Once or twice, police held the phone to view information Black showed them, and they passed it back or put it on the table near

---

to contain a wide variety of data relevant to the crime, so it was not impermissibly generalized to list a wide variety of data as the data to be searched for. The warrant only needed to be "as specific as the circumstances and nature of activity under investigation permit." *Wilson*, 315 Ga. at 615.

[25] Black also makes a third argument — that there was no nexus between the contents of his phone and the alleged rape — but in light of our analysis and holding in Case No. A23A0939, this argument fails.

Black as they continued speaking. Black admitted to B. G. and police that he already had deleted at least one video from his bedroom security camera, purportedly to protect B. G.'s modesty, and the video recording of Black's police interview shows him repeatedly displaying photos and videos to the interviewer as they spoke. Accordingly, there was ample reason to believe that Black (or anyone else) could delete or alter highly relevant data if the phone was not secured. The record shows that Black "voluntarily gave officers the cell phone, not once, but twice [at least]. And when officers observed [Black] manipulating the phone later during the interview, they seized it until they could obtain a search warrant[, which they did within two days.]"[26] This was a "reasonable preventative step to preserve evidence,"[27] and based on the circumstances of this case and Black's police interview, we discern no error.

---

[26] *Davis v. State*, 301 Ga. 397, 406 (6) (b) (801 SE2d 897) (2017).

[27] Id. See also *Reyes-Castro*, 352 Ga. App. at 59 (1) (a) (detective was authorized to seize defendant's cell phone in order to prevent the destruction of evidence and to retain it until the detective could obtain a search warrant and have the search conducted). See also *Stephens v. State*, 346 Ga. App. 686, 692 (2) (816 SE2d 748) (2018) (affirming the denial of a motion to suppress under the independent source doctrine because "even assuming that the initial downloading was an unconstitutional search, the information subject to the motion to suppress was obtained through the execution of a valid search warrant").

4. *Delay of the Second Warrant.* Black also contends that the trial court should have granted the motion to suppress because there was an unreasonable delay between the initial seizure of his phone at the time of his arrest and the issuance of the Second Warrant four months later.[28] We disagree.

As a general matter,

[a] seizure that is lawful at its inception can nevertheless violate the Fourth Amendment due to subsequent events that unreasonably infringe upon a person's possessory interests in the seized property. Delay in obtaining a warrant to search a seized item is one example of conduct that can unlawfully interfere with a defendant's possessory interests. The reasonableness of the delay in getting a warrant is determined on a case-by-case basis, in the light of all of the facts and circumstances. We have adopted a four-factor test for balancing governmental and private interests in this context, considering (1) the significance of the interference with the person's possessory interest; (2) the duration of the delay; (3) whether or not the person consented to the

[28] Although the trial court did not address this argument explicitly in its order, both parties thoroughly addressed this argument during the hearing on Black's motion to suppress, and we address it to the extent that the trial court implicitly denied it. See *Perkins v. State*, 360 Ga. App. 782 (1) (861 SE2d 621 (2021) ("Because the trial court [ruled on] the motion to suppress in a summary order without explicit findings, 'we presume that the trial court implicitly made all the findings in support of its ruling that the record would allow.'"), quoting *State v. Walden*, 311 Ga. 389 (858 SE2d 42) (2021).

seizure; and (4) the government's legitimate interest in holding the property as evidence.[29]

Here, "the State had a legitimate interest in holding the electronic devices as evidence,"[30] but Black's possessory interest in his phone was significant, given the importance of phones as "unique possessions in which individuals may have a particularly powerful possessory interest."[31] It does not appear that Black consented to the seizure, but the record does not demonstrate that after it was seized, Black requested to have it returned.[32] Instead, police obtained the First Warrant within two days of seizing it. This was not an unreasonably long period of time to obtain a warrant.

---

[29] (Citations and punctuation omitted.) *Nelson v. State*, 312 Ga. 375, 377 (863 SE2d 61) (2021).

[30] Id. at 378.

[31] (Punctuation omitted.) *State v. Rosenbaum*, 305 Ga. 442, 451 (2) (a) (826 SE2d 18) (2019).

[32] See OCGA § 17-5-30 (a) ("A defendant aggrieved by an unlawful search and seizure may move the court for the return of property. . . ."). See also *Stephens*, 346 Ga. App. at 690 (2) (addressing a scenario where police downloaded the contents of a phone immediately after seizing it, and "[a]fter the data was downloaded, the detective obtained a search warrant permitting the search of the cell phone's contents").

What Black focuses on here is the additional time police took to obtain the Second Warrant, which was more narrow, able to withstand scrutiny on a motion to suppress, and eventually authorized the search at issue. During this time, police had the First Warrant, which was unchallenged until Black moved to suppress the phone evidence in mid-November 2021, approximately three months after police seized Black's phone on August 16, 2021.[33] Black did request his phone at a hearing in November, but the State had been operating under the First Warrant, and the trial court had not resolved Black's challenge to it. Further, on December 6, 2021, the State obtained the Second Warrant authorizing the more narrow search, which was one day after the trial court's ruling that the First Warrant did not authorize a search. Based on this procedural history, the State did not unreasonably deprive Black of his phone, because the State did obtain the First Warrant in a timely manner, had demonstrated a legitimate need to preserve the evidence on the phone based on the facts of the case, and quickly obtained the Second Warrant when the trial court ruled

---

[33] The record shows that a hearing was held on November 16, 2022, in which suppression of the phone was argued, and Black filed a motion to suppress the phone's contents on November 18, 2021.

that the First Warrant failed as a whole.[34] Accordingly, this enumeration is without

merit.[35]

*Judgment affirmed in part and reversed in part in Case No. A23A0939;*

*affirmed in Case No. A23A0940. Rickman and Gobeil, JJ. concur.*

---

[34] See, e.g., *United States v. Stabile*, 633 F.3d 219, 236 (III) (A) (3) (3d Cir. 2011) (applying "'a rule of reasonableness'" and holding that a three-month delay was not unreasonable under the circumstances). See also *United States v. Morgan*, 713 F. Appx. 829, 831 (11th Cir. 2017) (unpublished) (holding that a 17-day delay in obtaining a warrant was reasonable); Compare *Rosenbaum*, 305 Ga. at 451-455 (2) (totality of circumstances confirmed trial court's conclusion that 539-day delay in securing warrants for search of electronic devices seized incident to arrest was unreasonable because the State made no showing of particular complexity, difficulty in drafting the warrant, or competing demands on a limited number of officers, and record showed that defense had sought return of the devices for a year-and-a-half).

[35] As recounted in the analysis in Divisions 1 and 2 of this opinion, the facts of this case distinguish it from a recent case, *State v. Thurston*, __ Ga. App. __ (888 SE2d 362) (2023), in which this Court held that the State could not remedy a blatant Fourth Amendment violation by later obtaining a warrant based on the same pre-existing, generalized information. Here, by contrast, police acted in a timely manner to obtain both warrants and in each case gave a particularized explanation of the connection between Black's cell phone data and the alleged crime. Further, to demonstrate probable cause to search Black's phone, police relied on the interviews with him and the victim, which information was lawfully obtained by police and caused them to seek a warrant. Compare *Mobley v. State*, 307 Ga. 59, 77 (4) (b) (834 SE2d 785) (2019) ("There is no evidence that any of the investigating officers applied for a warrant, were preparing an application for a warrant, or even were contemplating a warrant before [an investigator] retrieved the data."). Last, to the extent that the First Warrant was overbroad in its time frame, it did provide specific facts demonstrating the need to preserve the data on Black's phone, even if it arguably did not justify a search of the phone's entire contents.