S05A1039. LEMON v. THE STATE.
(619 SE2d 613)

MELTON, Justice.

In this interlocutory appeal regarding a felony murder resulting from a domestic dispute, Glenn Carl Lemon contends that the trial court erred by denying his motion to suppress certain evidence seized

from his home during the execution of a search warrant.[1] Specifically, Lemon argues that (1) the search warrant was not supported by probable cause and (2) the information contained in the search warrant was stale. For the reasons set forth below, we affirm.

Viewing the evidence in the light most favorable to the trial court's ruling, the record shows that, in the early morning hours of April 26, 2003, Lemon admittedly had an altercation with his girlfriend, Annette Wooten, regarding pornographic DVDs he had been watching in their home. The confrontation escalated, and Lemon choked Wooten until she lost consciousness. Lemon then called 911 for emergency assistance, and Officer J. W. Thompson reported to the scene. Lemon told Officer Thompson that, prior to fighting with Wooten, he had been drinking beer and smoking marijuana. Lemon was subsequently arrested for aggravated assault and aggravated battery. Prior to leaving Lemon's home, police secured the premises; however, at Lemon's request, a key was left hidden in a planter so Lemon's sister could gather some of his belongings and bring them to him at the jail. The record also makes it clear that a cousin of Wooten also had access to the home, and, shortly after Lemon's arrest, the cousin changed the locks to increase the security of the home.

On April 28, 2003, two days after the altercation, Wooten died from her injuries. Officer Thompson immediately requested a search warrant for Lemon's home, and, contemporaneously, another officer sought an arrest warrant against Lemon for the crime of felony murder.[2] In Officer Thompson's application for a search warrant, he explicitly stated the address of Lemon's home, and he indicated that the "offense" occurred there two days earlier at 1:30 a.m. Officer Thompson then specified that he wished to search for the following items: "contraband drugs, marijuana, marijuana residue, cocaine powder, crack cocaine and assorted paraphernalia related to the ingestion of marijuana, cocaine and crack cocaine." In addition, he also listed: "pornographic mediums, letters, computers, papers that indicate problems in the relationship between the two, movies, tapes, DVD's of a pornographic nature."

In an affidavit accompanying the warrant application, Officer Thompson explained that the evidence was being sought in relation to the crimes of possession of illegal drugs (listed as "V.G.C.S.A."), aggravated assault, aggravated battery, and felony murder. To establish probable cause, Officer Thompson further explained that

---

[1] The evidence seized included a computer tower, a laptop computer, papers, journal writings, and pornographic DVDs.

[2] This arrest warrant fully described the act of domestic violence resulting in Wooten's death. It is unclear from the record, however, whether the magistrate considered the arrest warrant before or after the application for the search warrant.

Lemon informed him that both he and Wooten had used drugs in the home, that he did not know where all of the drugs were located, and that Wooten had lived in the home with him for five years.

In addition, Officer Thompson provided oral testimony to the trial court regarding the warrant application and accompanying affidavit. When asked about the information that he orally conveyed to the reviewing magistrate, Officer Thompson explained:

> Pretty much it would be the same thing [provided in the application and affidavit] or answering the questions the [m]agistrate may have had. At this point, I can't think of anything more specific than what the affidavit covered. I can't remember if the [j]udge asked any specific question relating to the search itself or not.

Thompson further elaborated:

> There could have been [additional information conveyed that was not included in the application and affidavit]. I would imagine the [j]udge would want to know the status of the woman and I probably would have explained she died from the injuries and their relationship and I'm not sure that will be typed in there word-for-word[, for example,] boyfriend-girlfriend living together, so there could be other oral testimony that is not typewritten, but I cannot recall specific word-for-word or generic what it might have been.

1. Lemon contends that the search warrant was not supported by probable cause. We disagree.

> A search warrant will only issue upon facts "sufficient to show probable cause that a crime is being committed or has been committed." OCGA § 17-5-21 (a). The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants. *Grier v. State*, 266 Ga. 170, 172 (465 SE2d 655) (1996). A magistrate's

decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court. *McClain* [*v. State*, 267 Ga. 378, 388 (477 SE2d 814) (1996)].

*DeYoung v. State*, 268 Ga. 780, 786 (7) (493 SE2d 157) (1997).

The information provided to the magistrate by Officer Thompson in this case provided a substantial basis for the conclusion that probable cause supported the search of Lemon's home. With regard to evidence of criminal drug use, the application made it clear that Lemon had informed Officer Thompson that both he and Wooten had actively been using illegal drugs in the home and that some quantities of both marijuana and cocaine were stored there. This information would establish the necessary probable cause in relation to the drug charges.

With regard to evidence relating to the crimes of aggravated assault, aggravated battery, and felony murder, the application specifically referenced, among other things, "pornographic mediums, letters, computers, papers *that indicate problems in the relationship between the two*." (Emphasis supplied.) Thus, the application listed the salient evidence and gave a reason why it was salient, namely that it would establish the reasons why Lemon and Wooten fought. In addition, Officer Thompson's supporting affidavit made it clear that he originally went to Lemon's home to investigate a "domestic violence assault" which relates to the statement in the warrant application that Lemon and Wooten had a troubled relationship. Combined with any oral testimony concerning the nature of the relationship between Lemon and Wooten about which Officer Thompson believes the magistrate would have inquired,[3] the magistrate, given all of the circumstances set before him, did not err by granting the warrant and finding that a "fair probability" existed that the evidence supporting the violent crimes admitted to by Lemon would be found in his home.

2. Lemon next contends that the magistrate erred by issuing the search warrant because the facts recited in the warrant application and supporting affidavit were stale. Specifically, Lemon contends that, because Officer Thompson waited two days before applying for a search warrant, there was little likelihood that the evidence sought would still be in Lemon's home.

The concept of staleness with regard to evidence supporting a search warrant has been explained as follows:

---

[3] The search warrant explicitly incorporated "oral testimony given to the magistrate," although the substance of this testimony is not described.

> The ultimate criterion in determining the degree of evaporation of probable cause . . . is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime . . . , of the criminal . . . , of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later.

*State v. Lejeune*, 277 Ga. 749, 753 (2) (594 SE2d 637) (2004), quoting *Andresen v. State*, 24 Md. App. 128, 172 (331 A2d 78) (1975).

> "Staleness" as [it] relates to probable cause is not always measured by the interval between the commission of the crime and the issuance of the search warrant. "Staleness" as [it] relates to probable cause is measured by the probability that the thing to be seized is located at the place to be searched and it involves the interval between (i) the time when the thing to be seized is indicated by the evidence or information to be at the place to be searched and (ii) the time when the search warrant is issued.

*Mitchell v. State*, 239 Ga. 456, 458 (2) (238 SE2d 100) (1977) (information that suspect's bloodstained pants were observed at defendant's home two days prior to issuance of warrant was not stale).

Applying these principles to the case at hand, it is clear that the items relating to the crime of aggravated assault were not perishable. See, e.g., *Buckley v. State*, 254 Ga. App. 61, 63 (561 SE2d 188) (2002) (hard drive on computer not perishable). See also *Tuzman v. State*, 145 Ga. App. 761, 765 (2) (244 SE2d 882) (1978) (records kept in dental office considered permanent in character and likely to be maintained in a single place). It is also clear that these items would likely remain at the home over the course of just 48 hours, due to their utility in that environment. Therefore, given all the circumstances, Lemon's staleness argument as it relates to these items lacks merit.

With regard to the evidence of drug use, the items being sought were perishables; however, under the specific facts of this case, the short delay between the time of the arrest and the ultimate search did not unduly eradicate the probability that the drugs and drug paraphernalia to be seized were located at Lemon's home. Unlike the

scenario set forth in *Andresen*, there is no indication that anyone "cleaned up" the home or otherwise removed evidence following Lemon's arrest. To the contrary, in this case a relative of Wooten actually changed the locks on the home to increase its security. In addition, Lemon, who lived in the home on a daily basis, indicated that the drugs to be found were stored away in places with which even he was unfamiliar. This statement undermines his current contention that, following his arrest, his sister or Wooten's cousin quickly could have found all of the relevant evidence and destroyed it. This speculation does not eradicate the reasonable probability that drugs could be found at Lemon's home on the date that the warrant issued.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 19, 2005.

*Larry D. Wolfe*, for appellant.

*Patrick H. Head*, District Attorney, *Dana J. Norman, Amelia G. Pray, Laura J. Murphree*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, for appellee.