**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 3, 2024**

# In the Court of Appeals of Georgia

A24A0232. THE STATE v. SANTIAGO.

A24A0233. THE STATE v. SANTIAGO.

HODGES, Judge.

In two separate cases, a Paulding County grand jury indicted Edwin Santiago for one count of aggravated child molestation and two counts of child molestation against K. D. (Case No. A24A0232) and for one count of aggravated child molestation against E. A. (Case No. A24A0233). Santiago filed a motion in both cases to suppress certain evidence seized from his residence, and the State appeals from the Superior Court of Paulding County's order granting Santiago's motions. See OCGA § 5-7-1 (a) (4). We have consolidated these cases for decision on appeal, and now conclude that

the trial court erred in granting Santiago's motions to suppress. Therefore, for the following reasons, we reverse.

Our standard of review is well settled:

The trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous; where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. Where, as here, the issue turns on the question of whether a trial court committed an error of law in granting a motion to suppress, we apply a de novo standard of review. The appellate court owes no deference to the trial court's conclusions of law.

(Citations and punctuation omitted.) *State v. Gauthier*, 326 Ga. App. 473, 473-474 (756 SE2d 705) (2014). So viewed, City of Dallas police officers received a report from E. A.'s mother on April 2, 2021 concerning Santiago's sexual abuse of then ten-year-old E. A. In particular, E. A. disclosed that Santiago used a massaging tool on E. A.'s buttocks and vagina while she was a guest in his residence in November or December 2020. In a forensic interview conducted on April 6, 2021, E. A. reiterated that the abuse occurred while she was a guest with other children in Santiago's trailer in November or December 2020. Santiago's wife and the other children left E. A. and

2

Santiago alone in a bedroom. It was then that, while E. A. was lying on a purple blanket on the bed, Santiago used the massaging tool on her buttocks and vagina. Also on April 6, 2021, Santiago telephoned Dallas police claiming that he was being threatened by a neighbor, K. D.'s father. K. D. told her father that Santiago had, on two occasions, tried to pull her pants down and had discussed his sexual behavior with her.[1]

The initial report by E. A.'s mother, E. A.'s statements during the forensic interview, and K. D.'s father's statements were presented to a magistrate in support of a single search warrant application on April 8, 2021. A magistrate granted the warrant application and issued a search warrant the same day. Officers executed the warrant at Santiago's residence later that day, during which officers seized two massaging devices and a purple comforter.

In separate indictments, a Paulding County grand jury indicted Santiago for one count of aggravated child molestation and two counts of child molestation against K. D. and for one count of aggravated child molestation against E. A. In each case, Santiago filed a motion to suppress, arguing that: (1) there was no probable cause to

---

[1] Although the indictment alleges that K. D. was "under the age of 16 years," the limited record does not reveal K. D.'s age at the time of Santiago's alleged acts.

support a search warrant; (2) the warrant was an impermissible "general warrant[;]" and (3) the application for the warrant relied upon stale information. After a hearing, the trial court granted Santiago's motions to suppress. These appeals follow.

Through a single enumeration of error in each case, the State contends broadly that the trial court erred in granting Santiago's motions to suppress. The State offers three interrelated arguments in support of these enumerations, and we consider each in turn.

At the outset, we note that "[a] search conducted pursuant to a search warrant, regular and proper on its face, is presumed to be valid and the burden is on the person who moves to suppress the items found to show that the search warrant was invalid." (Citation and punctuation omitted.) *Leili v. State*, 307 Ga. 339, 342 (2) (834 SE2d 847) (2019).

(a) *Probable Cause*. First, the State asserts that the trial court erred in concluding that there was no probable cause to believe that the comforter and the massaging tool would still be in Santiago's residence by the time law enforcement officers obtained a search warrant. We agree.

In its order granting Santiago's motion to suppress, the trial court concluded that the allegations against Santiago were "too remote in time to obtain a search warrant" and that the "[a]ffidavit for the search warrant was insufficient" because "[b]y the time law enforcement obtained a search warrant, . . . no [p]robable [c]ause existed to believe that the items searched for would still be in the residence."

Under Georgia law,

> [a] search warrant will only issue upon facts "sufficient to show probable cause that a crime is being committed or has been committed." OCGA § 17-5-21 (a). The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citations and punctuation omitted.) *Lemon v. State*, 279 Ga. 618, 620 (1) (619 SE2d 613) (2005). "The duty of an appellate court reviewing a search warrant is to determine, based on the totality of the circumstances, whether the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant." *Glenn v. State*, 302 Ga. 276, 281 (III) (806 SE2d 564) (2017). "A

magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." *Lemon*, 279 Ga. at 620-621 (1).

We agree with the State that there was sufficient probable cause to support the magistrate's issuance of the search warrants.

> The test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the factual and practical considerations of everyday life on which reasonable and prudent [people] act. Moreover, even doubtful cases should be resolved in favor of upholding a warrant.

(Citation and punctuation omitted.) *Taylor v. State*, 303 Ga. 57, 60-61 (2) (810 SE2d 113) (2018). In this case, a detective submitted both an oral statement under oath and an affidavit in support of the application for a search warrant. Those materials alleged that Santiago and E. A., a minor, were in Santiago's bedroom atop a purple blanket when Santiago used a massaging tool on E. A.'s buttocks and vagina. These allegations, buoyed by E. A.'s outcry and the forensic interview E. A. completed (the general content of which was disclosed to the magistrate), link Santiago and Santiago's residence to the materials used to commit the alleged acts in a manner sufficient to demonstrate probable cause to support the search warrant application for the

comforter and the massaging tool. See id. at 61-62 (2); *Hutcheson v. State*, 361 Ga. App. 890, 895-897 (2) (864 SE2d 106) (2021) (evaluating sufficiency of search warrant application, including nexus between computer and alleged sexual activity); see also *Amica v. State*, 307 Ga. App. 276, 278 (1) (a) (704 SE2d 831) (2010) (concluding that nine-month lapse from the crimes' occurrences to the issuance of a warrant did not invalidate probable cause for search warrant).[2] Stated differently, we conclude, based on the totality of the circumstances, that "the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant." *Glenn*, 302 Ga. at 281 (III). Accordingly, we conclude that the trial court erroneously granted Santiago's motions to suppress on this basis.

(b) *Staleness.* Second, the State argues that, contrary to the trial court's conclusion, the information in the search warrant application was not stale. Again, we agree.

---

[2] That the detective's presentations may not have supplied probable cause to show a nexus between the other items listed in the warrant and Santiago's crimes is of no moment, as the only items seized in the search of his residence were two massaging devices and a purple comforter. See *Reaves v. State*, 284 Ga. 236, 237 (1) (b) (664 SE2d 207) (2008) (affirming suppression of "notes" and "papers," in the absence of probable cause to support those items listed in the warrant, while also affirming denial of suppression for other items listed in warrant).

On this point, the trial court held that the information relied upon by law enforcement to secure the search warrant was stale, noting that "[p]robable [c]ause quickly dwindles with the passage of time with isolated allegations as opposed to continuous conduct like conspiracies. The staleness doctrine requires that the information supporting the application for the warrant shows that probable cause exists at the time the warrant issues."

Our Supreme Court has described staleness as it relates to search warrants thusly:

> The ultimate criterion in determining the degree of evaporation of probable cause is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime, of the criminal, of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

(Citation and punctuation omitted.) *Lemon*, 279 Ga. at 622 (2). Stated differently, "[s]taleness as it relates to probable cause is measured by the probability that the thing to be seized is located at the place to be searched and it involves the interval between

(i) the time when the thing to be seized is indicated by the evidence or information to be at the place to be searched and (ii) the time when the search warrant is issued." (Citation and punctuation omitted.) Id. As a result, "[s]taleness . . . is not always measured by the interval between the commission of the crime and the issuance of the search warrant." (Citation and punctuation omitted.) Id. In short,

> although a magistrate must consider time as an element of probable cause when issuing a warrant, the mere passage of time does not equate with staleness. To determine whether the information relied upon in obtaining a search warrant is stale, a judge should determine whether the circumstances indicate a reasonable probability that the conditions referred to in the affidavit continue to exist at the time of the issuance of the search warrant.

(Citation and punctuation omitted.) *Gerbert v. State*, 339 Ga. App. 164, 166 (1) (a) (793 SE2d 131) (2016).

Here, it appears the trial court's chief concern was that probable cause "quickly dwindle[d] with the passage of time," which does not itself render probable cause stale. See *Lemon*, 279 Ga. at 622 (2); *Gerbert*, 339 Ga. App. at 166 (1) (a). To the contrary, the massaging tools and the purple comforter "were non-perishable, non-consumable items which were legally possessed and of continuing utility to

defendant." (Citation and punctuation omitted.) *Amica*, 307 Ga. App. at 278 (1) (a); see also *Lemon*, 279 Ga. at 622 (2); *Carson v. State*, 314 Ga. App. 515, 518 (1) (d) (724 SE2d 821) (2012). As a result, these items "were unlikely to be affected by the passage of time." *Carson*, 314 Ga. App. at 518 (1) (d). Therefore, the information used to secure the search warrant was not stale, and we again conclude that the trial court erred in granting Santiago's motions to suppress.

(c) *Sufficient Specificity*. Third, the State contends that the trial court erroneously concluded that the search warrant at issue was a prohibited "general warrant" that lacked sufficient specificity. We agree once again.

The trial court

opine[d] that the search warrant in question constituted a "fishing expedition". Detective Weaver not only sought evidence of the massage tool and blanket, but also sought evidence of "sex tools", "sexual devices", "all publications regarding sexual activity", "desk top", "tablet", "lap tops", and "cellular devices" despite failing to provide the magistrate with any sworn evidence as to how these items were connected to the alleged crime, and why he believed they might be contained in the Defendant's residence. The search warrant in question allowed law enforcement to search for items not justified by the facts in the affidavit or the sworn testimony presented to the magistrate.

Similarly, the trial court further noted that the search warrant "failed to contain a residual clause limiting what the officers were authorized to seize" and that it was "both overbroad and lacking in particularity."

"By definition, a general warrant is one which does not sufficiently specify the place or the person to be searched." (Citation and punctuation omitted.) *Leili*, 307 Ga. at 348 (4).

> The Fourth Amendment to the United States Constitution requires that a search warrant particularly describe the article or articles sought. In addition to requiring that officers have enough guidance to locate and seize only those items the warrant authorizes them to seize, this particularity requirement also prevents general searches — that general, exploratory rummaging in a person's belongings by the government that has been rejected since the founding as a violation of fundamental rights. The particularity requirement is applied with a practical margin of flexibility, depending on the type of property to be seized, and a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit. The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.

(Citations and punctuation omitted.) *State v. Wilson*, 315 Ga. 613, 614-615 (884 SE2d 298) (2023).

In this case, the trial court, initially, correctly noted that the detective who procured the search warrant "sought evidence of the massage tool and blanket[.]" The trial court added that the search warrant also sought evidence of "sex tools", "sexual devices", "all publications regarding sexual activity", "desk top", "tablets", "lap tops", and "cellular devices." Although the trial court determined that there was no probable cause for these additional items, see n. 1 supra, it held that the absence of probable cause as to the additional items invalided the search warrant in its entirety. This was error. "[T]here is nothing to indicate that a broader seizure in fact occurred [in this case] and thus nothing to indicate any harm. Indeed, where a search as it was actually conducted is lawful, it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad." (Citations and punctuation omitted.) *Haynes v. State*, 317 Ga. App. 400, 402 (2) (731 SE2d 83) (2012). Because Santiago has failed to demonstrate that the search in this case was unlawful, and because the only items seized were supported by probable cause, we conclude that the trial court erred in granting Santiago's motions to suppress.

In sum, we conclude that the search warrant was supported by probable cause, that the information upon which officers relied to secure the warrant was not stale,

and that the seizure actually conducted yielded only those items supported by probable cause. Therefore, we reverse the trial court's orders granting Santiago's motions to suppress.

*Judgments reversed. Doyle, P. J., and Watkins, J., concur.*